1997 ND 118

Kenneth BLANCHARD, Claimant
and Appellant,

v.

NORTH DAKOTA WORKERS
COMPENSATION BUREAU,
Appellee,

and

Hanson–Runsvold Funeral
Home, Respondent.

Civil No. 970013.

Supreme Court of North Dakota.

June 24, 1997.

Daniel E. Phillips (argued), of Schneider, Schneider & Schneider, Fargo, for appellant.

Leo F.J. Wilking (argued), Special Assistant Attorney General, Fargo, for appellee.

MESCHKE, Justice.

[¶ 1] Kenneth Blanchard appealed a judgment affirming a Workers Compensation Bureau order denying his reapplication for benefits. We hold the Bureau failed to adequately explain its reasons for rejecting a recommendation by an Administrative Law Judge (ALJ) and for disregarding medical evidence favorable to Blanchard. We reverse and remand to the Bureau to adequately explain its decision.

[¶ 2] Blanchard began working as a funeral director at Hanson–Runsvold Funeral Home in July 1994. According to Hanson–Runsvold's manager, Blanchard lacked interpersonal skills for that position, and Hanson–Runsvold limited his work primarily to embalming with some night on-call duties. Blanchard's work included some lifting and prolonged standing.

[¶ 3] On November 28, 1994, in the course of his employment, Blanchard slipped on ice in his employer's parking lot and broke his right ankle. The Bureau accepted Blanchard's claim for benefits and paid him associated medical and disability benefits. The Bureau also began vocational rehabilitation services for Blanchard.

[¶ 4] On January 27, 1995, Blanchard's treating physician, Dr. Howard Berglund, reported Blanchard could "begin work at reduced capacity (4–6 hours/day, no prolonged standing or driving, etc.) on 2/1/95" with "provisions made for him at work so as to allow him to gradually get back into his activities as he can tolerate." Blanchard returned to part-time work on February 1. A February 2 assessment by Blanchard's rehabilitation consultant, Sara Jane Florence, reported Blanchard complained about pain, swelling and fatigue in his right leg, and that he could not stand or walk for prolonged periods of time. A February 6 report by Hanson–Runsvold's manager said Blanchard had complained "his foot was blowing up like a balloon" when he embalmed.

[¶ 5] On February 24, 1995, Dr. Berglund reported Blanchard had "limited range of motion" with "decreased swelling" and recommended physical therapy. In a job-analysis form, Dr. Berglund indicated Blanchard "can perform" the requirements for his job, but should maintain his "modified status" for another two to three weeks and then "wean into regular duties."

[¶ 6] On March 1, 1995, Blanchard began working regular hours at Hanson–Runsvold. On March 6, Dr. Berglund signed a work release that said Blanchard would be able to perform his regular duties within two to four weeks and that anticipated Blanchard would reach maximum medical improvement in "? 8 weeks." On March 14, Blanchard told his employer he was feeling "great" and wanted to resume all of his pre-injury duties. On March 14, Blanchard also told Florence his foot would get "puffy," and he was "not doing great, but doing pretty good." On March 15, Blanchard resumed his preinjury duties, including on-call work, and he received no disability benefits after March 16. On March 29, Florence reported Blanchard's most appropriate rehabilitation option under NDCC 65–05.1–01(4)(a) was return to work at the same position with the same employer. In an "outpatient final note" in April 1995, Blanchard's physical therapist indicated that "[a]t last treatment session, [Blanchard] reports that he continues to have significant edema depending on the amount of activity," but that "[a]ll treatment goals were met."

[¶ 7] On April 14, 1995, Hanson–Runsvold terminated Blanchard's employment for "failing to wear personal protective equipment in the preparation room, lying to fellow employees, sleeping during company time and poor work ethic." The termination notice said Blanchard had been cited twice before for other infractions.[1]

---

1.  In August 1994 Blanchard was disciplined for

"acting in a negligent manner in dressing and

[¶ 8] On April 22, 1995, Blanchard reapplied for workers compensation benefits, claiming he was unable to perform his pre-injury duties. On April 27, the Bureau informally denied Blanchard's reapplication, concluding his first appropriate rehabilitation option under NDCC 65–05.1–01(4) was to return to his pre-injury work. The Bureau concluded Blanchard's injury did not diminish his earning capacity beyond March 16, 1995 and, absent a significant change in his medical condition, he was not eligible for any further disability or vocational benefits. Blanchard petitioned for reconsideration.

[¶ 9] On May 5, 1995, Dr. Berglund reported Blanchard continued to have some difficulties with his ankle and had not reached maximum medical improvement. On May 19, Dr. Berglund informed the Bureau that Blanchard had not achieved maximum medical improvement and was having significant difficulties with his ankle from lifting and prolonged standing. On July 6, 1995, Dr. Berglund reported Blanchard still was having difficulty with his ankle and foot, but he had reached maximum medical improvement. On October 6, 1995, Dr. Berglund again reported Blanchard was having difficulties with his ankle and set work limitations on prolonged standing or lifting more than thirty pounds.

[¶ 10] After a formal hearing in January 1996, an ALJ found Blanchard was unable to return to his pre-injury employment. The ALJ recommended reversing the Bureau's order and reinstating disability and vocational benefits from April 15, 1995, until Blanchard was rehabilitated. The Bureau rejected the ALJ's conclusion that Blanchard was incapable of returning to his pre-injury employment, ruling the evidence established Blanchard was able to return to his pre-injury employment and did return to that job for more than four weeks before he was terminated for general incompetence. The district court affirmed the Bureau's decision, and Blanchard appealed.

[¶ 11] On appeal from a district court's review of a decision by the Bureau, we review the Bureau's decision. *Siewert v. North Dakota Workers Comp. Bur.*, 554 N.W.2d 465, 466 (N.D.1996). We affirm the Bureau's decision unless its findings of fact are not supported by a preponderance of the evidence, its conclusions of law are not supported by its findings of fact, its decision is not supported by its conclusions of law, or its decision is not in accordance with the law. *Id.; see* NDCC 28–32–19; 28–32–21. In determining whether the Bureau's findings of fact are supported by a preponderance of the evidence, we exercise restraint and do not make independent findings of fact, or substitute our judgment for that of the Bureau. *Siewert*, 554 N.W.2d at 467. Rather, as we also said in *Siewert*, we decide only whether the Bureau's findings adequately explain its decision and are reasonably supported by the greater weight of the evidence.

[¶ 12] Blanchard argues the Bureau did not have authority to request a recommended decision by the ALJ. He contends the ALJ's decision was a final order.

[¶ 13] The Bureau is an administrative agency. NDCC 28–32–01(1); *Foss v. North Dakota Workmen's Comp. Bur.*, 214 N.W.2d 519, 521 (N.D.1974). Under NDCC 54–57–03(1), "all hearings of administrative agencies under chapter 28–32, except hearings conducted by ... the workers compensation bureau ... must be conducted by the office of administrative hearings in accordance with the administrative hearings provisions of chapter 28–32." As an agency exempt from the requirement to use the office of administrative hearings in all cases, the Bureau may make a written request to that office to designate an ALJ to preside over a Bureau's administrative proceeding. NDCC 54–57–03(2) and (5). Under NDCC 54–57–04, a designated ALJ must comply with NDCC 28–32–08.5(4) and (6) that require hearing officers to "issue a recommended order, when appropriate," and to "issue a final order, if required by statute or requested by an agency." NDCC 28–32–13 directs:

casketing a body & failing to wear personal protective equipment." In September 1994, he was disciplined for negligence in handling a family's personal effects. Hanson–Runsvold's manager candidly admitted they "were going to fire [Blanchard] before he got hurt."

2. If the agency head, or another person authorized by the agency head or by law to issue a final order, is presiding, the order issued is the final order.

3. If the agency head, or another person authorized by the agency head or by law to issue a final order, is not presiding, then the person presiding shall issue a recommended order which becomes final unless specifically amended or rejected by the agency head. The agency head may adopt a recommended order as the final order. The agency may allow petitions for review of a recommended order and may allow oral argument pending issuance of a final order. An administrative agency may adopt rules regarding the review of recommended orders and other procedures for issuance of a final order by the agency.

Thus, whether an order is final or recommended depends on the designated status of the person presiding at the proceeding.

■ [¶ 14] We construe related statutes as a whole to give meaning to each word and phrase, if possible. *Frohlich v. North Dakota Workers Comp. Bur.*, 556 N.W.2d 297, 302 (N.D.1996). NDCC 28–32–08.5 requires hearing officers to issue "a recommended order, when appropriate" and "a final order, if required by statute or requested by an agency." NDCC 28–32–13 differentiates between final orders and recommended ones based on whether the person presiding was "authorized by the agency head or by law" to issue a final order. When read as a whole, the statutory scheme for decisions by an ALJ manifests a legislative intent that an ALJ's decision is a final order when the Legislature has authorized the ALJ to issue a final order, or when the requesting agency has authorized the ALJ to issue a final order.

[¶ 15] Blanchard asserts the ALJ was authorized by law to issue a final decision under NDCC 65–02–12 that, after dropping language he thinks superfluous, says "[a]ny . . . decision . . . is deemed to be the order or decision of the bureau." In its entirety, though, NDCC 65–02–12 says "[a]ny investigation, inquiry, hearing, or decision, and every order *by the director* is deemed to be the order or decision of the bureau." (Emphasis added). Blanchard's argument ignores that the phrase "by the director" modifies "decision." When read as a whole, NDCC 65–02–12 deems a decision by the director to be a decision by the Bureau and does not expressly authorize an ALJ to issue a final order for the Bureau.

[¶ 16] When the Legislature intends to make decisions by an ALJ final, the Legislature clearly expresses its intent. *See* NDCC 37–19.1–04(3) (in a veterans' preference hearing, a hearing officer shall issue findings and an order within fifteen days after the hearing is concluded and the order is binding on both parties, subject to appeal); NDCC 54–44.3–12.2 (in a state personnel board hearing, hearing officer issues a final decision). Blanchard has cited no comparable statute for workers compensation cases that says a decision by an ALJ is final.

[¶ 17] Additionally, this record does not show the Bureau asked the ALJ to issue a final order. The Bureau's written request under NDCC 54–57–03(2) for the designation of an ALJ to preside at this hearing is not part of the record. At the hearing, however, the ALJ informed the parties he had "been duly designated by the Bureau to preside" and would "make a recommendation to the Bureau as to the appropriate disposition of this matter." The ALJ's written decision said "the Bureau requested the designation of an administrative law judge from the Office of Administrative Hearings to conduct a hearing and to issue Recommended Findings of Fact and Conclusions of Law in this matter." The ALJ's decision said it was a "RECOMMENDED ORDER." The ALJ's statements satisfactorily demonstrate the Bureau authorized the ALJ to issue a recommended order. We hold the ALJ's decision was a recommendation and not a final order.

■ [¶ 18] Blanchard argues the Bureau erred in rejecting the ALJ's recommendation. He asserts the Bureau has not adopted any rules for review of a recommended order under NDCC 28–32–13(3). He argues that, absent implementing rules, the Bureau's failure to allow him to participate in its review and revision of the ALJ's recommendation was arbitrary and devoid of any meaningful standards or due process safeguards.

[¶ 19] NDCC 28–32–13(3) says "[a]n administrative agency may adopt rules regarding the review of recommended orders and other procedures for issuance of a final order by the agency." In *North Dakota Com'n of Med. Competency v. Racek*, 527 N.W.2d 262, 268 (N.D.1995), we explained the word "may" ordinarily creates a directory, non-mandatory duty under settled principles of statutory construction. We concluded the word "may" will be construed as "must" only if the context or subject matter requires that construction.

[¶ 20] NDCC 28–32–13 designates procedures for an agency to make findings of fact, conclusions of law, and an order. Subsection (3) authorizes an agency to adopt rules for review of recommended orders and other procedures for issuance of a final order by the agency. However, the language of that subsection does not compel adoption of rules for review of a recommended decision. While some of the duties prescribed in that subsection are phrased in mandatory terms, the authorization for rules to review a recommended order is not phrased in mandatory terms, nor does the context of the statute compel that result. *See Racek*, 527 N.W.2d at 266 (holding NDCC 28–32–08(1) authorizes, but does not require, administrative agency to conduct investigative hearing). We hold NDCC 28–32–13(3) authorizes, but does not require, the Bureau to adopt rules for review of a hearing officer's recommendation.

[¶ 21] That conclusion, however, does not mean there are no standards for an agency's rejection of an ALJ's recommendation. In *Schultz v. North Dakota Dept. of Human Serv.*, 372 N.W.2d 888, 892 (N.D.1985), we ruled, if an administrative agency rejects a hearing officer's recommendation, the agency should sufficiently explain its rationale for not following the recommendation. *See also Maginn v. North Dakota Workers Comp. Bur.*, 550 N.W.2d 412, 414 n. 1 (N.D.1996) ("sufficient to explain"); *Carlson v. Job Serv. North Dakota*, 548 N.W.2d 389, 393 (N.D. 1996) ("after careful review and consideration of the record"); *Kackman v. North Dakota Workers' Comp. Bur.*, 488 N.W.2d 623, 625 (N.D.1992) ("must adequately explain its ra-

tionale"); *Marion v. Job Serv. North Dakota*, 470 N.W.2d 609, 613 (N.D.1991) ("should be sufficient to explain the rationale"). In *Schultz*, 372 N.W.2d at 892, we also said an agency may even reject a hearing officer's recommendation on findings of the credibility of contradictory witnesses. *Compare Paulson v. Meinke*, 352 N.W.2d 191, 193–94 (N.D. 1984) (under NDRCivP 63, if successor judge is not satisfied with findings, conclusions and decision of predecessor judge, successor judge is limited to granting new trial); *Holzer v. Jochim*, 557 N.W.2d 57, 58–59 (N.D. 1996) (successor judge abused discretion in redeciding the merits of case tried before predecessor judge without affording the parties an opportunity to retry case). As *Holzer* at 59 explained, a major tenet of due process anticipates that a party receive adequate notice and fair opportunity to be heard by the decision maker.

[¶ 22] Blanchard analogizes this case to *Holzer*. Although Blanchard's equating the role of a hearing officer to that of a trial judge may have some logical symmetry, we need not reconcile *Holzer* with our *Schultz* line of agency decisions because we conclude the Bureau did not adequately explain its rationale for rejecting the ALJ's recommendations and for discrediting Blanchard's evidence.

[¶ 23] A claimant has the burden to prove the right to receive benefits from the workers' compensation fund. NDCC 65–01–11; *Spangler v. North Dakota Workers Comp. Bur.*, 519 N.W.2d 576, 577 (N.D.1994). The Bureau has the responsibility to weigh and resolve conflicting evidence. *Id.* Because the Bureau acts as both a fact finder and an advocate in considering a worker's claim and in resolving conflicting evidence, we have repeatedly cautioned that the Bureau "must not place itself in a full adversary position to the claimant." *E.g. Hayes v. North Dakota Workers Comp. Bur.*, 425 N.W.2d 356, 357 (N.D.1988). Instead, as we explained in *Siewert*, 554 N.W.2d at 470, the Bureau must consider the entire record, clarify inconsistencies, and adequately explain its reasons for disregarding medical evidence favorable to the claimant. The Bureau's nonadversary role parallels its responsibility to adequately

explain its rationale for rejecting an ALJ's recommendation.

[¶ 24] Here, the ALJ recommended:

4. Although the Claimant did not advise the employer and the vocational rehabilitation consultant as to the extent of the pain he was suffering in his foot, the best medical evidence concerning Claimant's condition are the records of Dr. Berglund from MeritCare. In Dr. Berglund's letter dated May 19, 1995, he concludes that the Claimant continues with significant difficulties with his ankle, and "has much difficulty with the activities of daily living, prolonged standing, stair-climbing, and lifting. This significantly precludes him from getting back into the type of occupation that he is currently employed in."

5. The administrative law judge finds that Claimant cannot go back to his pre-injury employment. This finding is supported by the May 19, 1995 letter of Dr. Berglund, which indicates that Claimant cannot go back to his pre-injury employment. Further, the restrictions outlined in Dr. Berglund's October 6, 1995 letter make it impossible for Claimant to return to his pre-injury employment.

6. The administrative law judge finds that the Bureau did not satisfy its obligation to return the Claimant to substantial gainful employment because his pre-injury job at Hanson–Runsvold was not appropriate given the Claimant's medical limitations, age and experience.

7. Claimant has thus proven he is eligible for vocational rehabilitation and disability benefits under the Act beyond March 16, 1995.

[¶ 25] Without addressing or explaining Dr. Berglund's medical reports, the Bureau rejected the ALJ's recommendation: [2]

5. The weight of the evidence demonstrates that Claimant was able to return to his pre-injury employment with Hanson–Runsvold, which consisted almost exclusively of embalming and night "on call"

work, and that from a physical standpoint he was able to carry out those duties in a satisfactory manner. Therefore, "return to same position" was the first appropriate option for Claimant, as recommended by the vocational rehabilitation consultant.

6. Claimant was terminated for incompetence and dishonesty, and not for any physical incapacity.

7. Claimant did not establish by a preponderance of the evidence that he had suffered a significant change in medical condition subsequent to March 16, 1995, so as to justify approval of his reapplication for benefits under § 65–05–08(2)(a), N.D.C.C. To the contrary, based on the Claimant's own statements to Ms. Florence and based on the observations of his fellow employees and the records of his physical therapist, it appears that Claimant's condition continued to improve subsequent to March 16, 1995.

8. Claimant's physical restrictions do not prevent him from working in various capacities at Hanson–Runsvold or other funeral homes, and to the extent he has not found employment in the funeral industry it is attributable to his lack of interpersonal skills and general incompetence, and not to any physical infirmity.

The Bureau failed to so much as mention Blanchard's treating physician's medical reports contemporaneous with the period of time Blanchard sought renewed benefits.

[¶ 26] Although Blanchard did not tell Florence or his employer about the extent of the pain in his ankle, he testified about experiencing pain and swelling in his ankle after he returned to work. Blanchard's testimony about his ankle was corroborated by his wife, by the physical therapist's April 1995 "final outpatient note" that "he continues to have significant edema," and by the medical reports from Dr. Berglund in May, July, and October 1995. Dr. Berglund did not testify at the administrative hearing, and there was no other medical evidence about Blanchard's

2. The Bureau also concluded that "[t]o the extent [Blanchard] made false statements ... and failed to disclose key information on his condition, ... [he] forfeited any additional benefits to which he might otherwise be entitled" under NDCC 65–

05–33. During oral argument, counsel for the Bureau conceded that conclusion had no legal significance. Counsel's concession disposes of that issue in this case.

condition. Florence testified that, if she had received Dr. Berglund's reports, she "would have contacted [him] and clarified what he meant."

[¶ 27] The Bureau, however, did not clarify what Dr. Berglund meant and, instead, rejected the ALJ's recommendation, effectively deciding Blanchard's evidence was not credible. The Bureau concluded evidence that Blanchard had satisfactorily performed his pre-injury work during February and March 1995 was sufficient to deny his reapplication for benefits during May and following months. The Bureau's position is fully adversary to the claimant,[3] and its decision does not adequately explain why the Bureau completely ignored Dr. Berglund's medical evidence about Blanchard's condition without clarifying it, or why it rejected the ALJ's recommendation. As we explained in *Spangler*, 519 N.W.2d at 581, the Bureau "cannot dismiss [a claimant's] complaints as incredible simply because the claimant 'attempt[ed] to keep working, rather than filing a claim,' and 'tried to keep his place on the employer's pay roll.' "

[¶ 28] The Bureau's decision also ignores that Blanchard reapplied for benefits under NDCC 65–05–08(2) that directs:

2. ... Disability benefits must be reinstated upon a finding that:

  a. The employee has sustained a significant change in medical condition shown by a preponderance of the evidence;

  b. The employee has provided evidence of actual wage loss attributable to the work injury; and

  c. The employee has not retired or voluntarily withdrawn from the job market as defined in section 65–05–09.3.

A reapplication for benefits requires a significant change in medical condition. The Bureau's discussion of Blanchard's credibility does not address nor adequately explain whether Blanchard's reported ankle problems in and after May 1995 were the result of a significant change in his condition. The Bureau cannot have it both ways. Without any clarification of the medical evidence in this record, either Blanchard was physically able to return to his pre-injury duties in March 1995 and he suffered a significant change in his condition, or he was never able to fully resume his pre-injury duties.

[¶ 29] We conclude the Bureau failed to adequately explain why it rejected Dr. Berglund's reports and the ALJ's recommendation. We reverse the judgment with instructions to remand this claim to the Bureau to adequately explain its decision.

[¶ 30] VANDE WALLE, C.J., and MARING and NEUMANN, JJ., concur.

SANDSTROM, J., concurs in the result.

---

3. The Bureau's adversary position is demonstrated by a statement by its counsel during a preliminary motion to sequester witnesses before the hearing by the ALJ:

I rely very much on the presence and the input of the three gentlemen [from the employer] who are here with me and Ms. Florence. We have prepared this case together. We have worked carefully on it.