1999 ND 153

**David VERNON, Claimant and Appellant,**

v.

**NORTH DAKOTA WORKERS COMPENSATION BUREAU, Appellee**

**and**

**G.L. Trucking & Rental, Respondent**

No. 990096.

Supreme Court of North Dakota.

July 29, 1999.

Kathryn L. Dietz, Dietz, Little & Haas, Bismarck, for claimant and appellant.

Lawrence E. King, Special Assistant Attorney General, Bismarck, for appellee.

MARING, Justice.

[¶ 1] David Vernon appealed a judgment affirming a North Dakota Workers Compensation Bureau order requiring him to forfeit future benefits for a back injury, reversing the Bureau's order requiring him to repay $33,519.30 in previously paid benefits, and directing the Bureau to pay him benefits for the period between January 21, 1997 and May 14, 1997. We affirm.

I

[¶ 2] Vernon received workers compensation benefits for a back injury sustained during the course of his employment in 1988. His condition improved with back surgery in 1990, but he continued treatment for back pain and was restricted

from returning to work. In July 1993, Kevin Axtman conducted a functional capacity assessment and categorized Vernon as having a tolerance for "sedentary/light work." During this time, Vernon reported he had trouble sitting for long periods. In 1994 and 1995, Dr. John Lonstein indicated Vernon had reported significant back pain which interfered with his daily activities. In November 1995, Vernon underwent a functional capacities assessment conducted by Allan Brossart. During the assessment, Vernon described pain at a level of nine on a scale of one to ten, and reported daily activities aggravated his back pain. As a result of the assessment, Brossart placed Vernon at a "less than sedentary work level," which, according to Brossart, posed "significant difficulties" for employability and retraining. Dr. Lonstein indicated Vernon reported significant back pain in April 1996, and the doctor concluded Vernon was permanently disabled.

[¶ 3] In 1996, after receiving an anonymous tip, the Bureau assigned a private investigator to perform an "activities check" on Vernon. The investigator interviewed Vernon and videotaped him on two occasions. On December 31, 1996, the Bureau mailed Vernon a notice of intention to discontinue benefits (NOID), which said his temporary total disability benefits would be discontinued effective January 21, 1997, because "information received by the bureau indicates that you have made false statements regarding your physical disability status. A formal legal order will be mailed in the near future." The NOID informed Vernon he had 21 days to contest the termination.

[¶ 4] On January 17, 1997, Vernon responded, stating he did not believe he had made any false statements regarding his disability status and inquiring "what false statements [he] supposedly made." On January 30, 1997, Vernon's counsel asked the Bureau to respond to Vernon's inquiry and to document the alleged false statements. On February 26, 1997, Vernon's counsel sent the Bureau another letter inquiring about Vernon's claim.

[¶ 5] On May 14, 1997, the Bureau's director of claims and rehabilitation, Jeff Bitz, issued an order under N.D.C.C. § 65–05–33 denying Vernon further benefits for the back injury and requiring him to repay $33,519.30 in benefits paid from August 16, 1994 through January 1, 1997.

[¶ 6] Vernon requested and received a formal evidentiary hearing. Thereafter, an administrative law judge recommended the Bureau find Vernon made false statements about his physical condition throughout the claim process, but the false statements were inadvertent and not willful and intentional within the meaning of N.D.C.C. § 65–05–33. The ALJ recommended reversing the Bureau's May 1997 order. The Bureau, through Bitz, rejected the ALJ's recommendation and concluded Vernon willfully made false statements to his health care providers, thus forfeiting his right to future benefits and requiring him to repay previously paid benefits.

[¶ 7] The district court affirmed in part and reversed in part, concluding a reasonable mind reasonably could have concluded a preponderance of the evidence supported the Bureau's finding Vernon willfully and intentionally made false statements. The court affirmed the Bureau's decision requiring Vernon to forfeit future benefits for the injury. The court concluded, however, there was insufficient evidence to establish the Bureau had paid Vernon disability benefits because of the false statements and therefore reversed the Bureau's order requiring him to repay $33,519.30 for previously paid benefits. The court also concluded the Bureau violated N.D.C.C. § 65–01–14(7)[1] and directed it to

---

1. Section 65–01–14(7), N.D.C.C., provided: "The bureau shall issue an administrative order under chapter 28–32 when it ... terminates or denies disability or vocational services." Section 65–01–14, N.D.C.C., was repealed by 1997 N.D. Sess. Laws ch. 532, § 6.

pay Vernon benefits from January 21, 1997, the date of termination of his benefits under the NOID, to May 14, 1997, the date the Bureau issued the formal order denying him further benefits. Vernon appealed.[2]

## II

[¶ 8] On appeal, we review the Bureau's decision, not the district court's decision. *Unser v. North Dakota Workers Comp. Bur.*, 1999 ND 129, ¶ 15. Under N.D.C.C. §§ 28–32–19 and 28–32–21, we affirm the Bureau's decision unless its findings of fact are not supported by a preponderance of the evidence, its conclusions of law are not supported by its findings of fact, its decision is not supported by its conclusions of law, its decision is not in accordance with the law, or it violates the claimant's constitutional rights or deprives the claimant of a fair hearing. *Sprunk v. North Dakota Workers Comp. Bur.*, 1998 ND 93, ¶ 4, 576 N.W.2d 861. In deciding whether the Bureau's findings of fact are supported by a preponderance of the evidence, we exercise restraint and do not make independent findings of fact, or substitute our judgment for the Bureau's decision. *Frohlich v. North Dakota Workers Comp. Bur.*, 556 N.W.2d 297, 301 (N.D. 1996). Instead, our review of the Bureau's findings of fact is limited to determining whether a reasoning mind reasonably could have determined the findings were proven by the weight of the evidence from the entire record. *Loberg v. North Dakota Workers Comp. Bur.*, 1998 ND 64, ¶ 5, 575 N.W.2d 221.

## III

[¶ 9] Vernon argues the Bureau did not consider the entire record, clarify inconsistencies, and adequately explain its rationale for rejecting the ALJ's recommendation. He argues he did not make "false statements" within the meaning of N.D.C.C. § 65–05–33, and the Bureau's conclusion he willfully made false statements to his healthcare providers is not supported by its findings of fact.

[¶ 10] If the Bureau rejects a hearing officer's recommendation, it must sufficiently explain its rationale for not following the recommendation. *Blanchard v. North Dakota Workers Comp. Bur.*, 1997 ND 118, ¶ 21, 565 N.W.2d 485. The Bureau may reject a hearing officer's recommendation on a witness's credibility. *Id.* An agency must adequately state its findings of fact and conclusions of law to facilitate meaningful appellate review. *See Singha v. North Dakota Bd. of Med. Exam'rs*, 1998 ND 42, ¶ 23, 574 N.W.2d 838; *Evans v. Backes*, 437 N.W.2d 848, 850–51 (N.D.1989). In other contexts, we have said a mere recitation or summary of evidence is not sufficient to satisfy a trier-of-fact's obligation to make findings of fact. *See Dunseith Pub. Sch. Dist. v. State Bd. of Pub. Sch. Educ.*, 437 N.W.2d 825, 830 (N.D.1989); *Peterson v. Hart*, 278 N.W.2d 133, 136 (N.D.1979).

[¶ 11] The Bureau terminated Vernon's benefits under N.D.C.C. § 65–05–33, which during the time relevant to this proceeding, provided:[3]

*Filing false claim or false statements— Penalty.* Any person claiming benefits or payment for services under this title,

---

2. The Bureau did not cross-appeal.

3. Section 65–05–33, N.D.C.C., was amended by 1997 N.D. Sess. Laws ch. 534, § 4, and now provides in part:

1. A person is guilty of a class A misdemeanor if that person is claiming benefits or payment for services under this title, and that person:
   a. Willfully files a false claim or makes a false statement.
   b. Willfully misrepresents that person's physical condition, including deceptive conduct which misrepresents that person's physical ability.
   c. Has a claim for disability benefits that has been accepted by the bureau and willfully fails to notify the bureau of:
   (1) Work or other activities as required under subsection 3 of section 65–05–08;
   (2) The receipt of income from work; or
   (3) An increase in income from work.

who willfully files a false claim or makes a false statement, or willfully fails to notify the bureau as to the receipt of income, or an increase in income, from employment, after the issuance of an order awarding benefits, in connection with any claim or application under this title is guilty of a class A misdemeanor, but if the act is committed to obtain, or pursuant to a scheme to obtain, more than five hundred dollars in benefits or services, the offense is a class C felony. Provided further that:

1. For the purposes of this section, "statement" includes any testimony, claim form, notice, proof of injury, proof of return to work status, bill for services, diagnosis, prescription, hospital or doctor records, x-ray, test results, or other evidence of loss, injury, or expense.

2. In addition to any other penalties provided by law, the person claiming benefits or payment for services in violation of this section shall reimburse the bureau for any benefits paid based upon the false claim or false statement and, if applicable, under section 65–05–29 and shall forfeit any additional benefits relative to that injury.

[¶ 12] Section 65–05–33, N.D.C.C., authorizes the Bureau to use administrative proceedings to recoup benefits paid to a claimant based upon a false claim or statements and to require a claimant to forfeit future benefits for that injury. *See Zueger v. North Dakota Workers Comp. Bur.*, 1998 ND 175, 584 N.W.2d 530; *Hopfauf v. North Dakota Workers Comp. Bur.*, 1998 ND 40, 575 N.W.2d 436; *Hausauer v. North Dakota Workers Comp. Bur.*, 1997 ND 243, 572 N.W.2d 426; *Dean v. North Dakota Workers Comp. Bur.*, 1997 ND 165, 567 N.W.2d 626; *F.O.E. Aerie 2337 v. North Dakota Workers Comp. Bur.*, 464 N.W.2d 197 (N.D.1990); *Hayden v. North Dakota Workers Comp. Bur.*, 447 N.W.2d 489 (N.D.1989).

[¶ 13] The sanctions of N.D.C.C. § 65–05–33 are not triggered merely because there is a difference of opinion about a claimant's entitlement to benefits, or the Bureau discredits evidence supporting a claim. Rather, as we explained in *Hausauer*, 1997 ND 243, ¶¶ 12–13, 17–18, 572 N.W.2d 426 (citations omitted):

> To trigger the statutory consequences under § 65–05–33 for a false claim or false statement by a person claiming benefits or payment of services, the Bureau must prove: (1) there is a false claim or false statement; (2) the false claim or false statement is willfully made; and (3) the false claim or false statement is made in connection with any claim or application under this title. We additionally require the Bureau to prove the false statement is material. We have defined "willfully" in the context of this statute's civil penalties as conduct engaged in intentionally, not inadvertently.

> Once triggered, N.D.C.C. § 65–05–33 provides for both criminal and civil penalties. The civil penalties include reimbursement to the Bureau "for any benefits paid based upon the false claim or false statement" and "forfeit[ure of] any additional benefits relative to that injury." In order to trigger the civil penalties, the Bureau must prove the elements of N.D.C.C. § 65–05–33 by a preponderance of the evidence.

> . . . .

> If the Bureau is seeking reimbursement for benefits paid, materiality requires the Bureau to prove the false claim or false statement caused the benefits to be paid in error. . . .

> If the Bureau is seeking forfeiture of future benefits, a false claim or false statement is sufficiently material if it is a statement which could have misled the Bureau or medical experts in a determination of the claim.

[¶ 14] In *Zueger*, 1998 ND 175, ¶¶ 1, 14, 584 N.W.2d 530, we concluded a claimant's

nonverbal performance on a functional capacity evaluation was not a "false statement" under N.D.C.C. § 65–05–33. We emphasized the Bureau's termination of benefits was based solely on the claimant's "conduct" on the functional capacity evaluation and not on any verbal statement made during the evaluation, and we held the Bureau erred in terminating benefits solely because of the claimant's conduct. *Zueger*, at ¶ 14.

[¶ 15] Here, the Bureau's rejection of the ALJ's recommendation summarized testimony about Vernon's interactions with various medical care providers and Vernon's statements to those individuals. The Bureau's findings of fact summarized the evidence but did not specifically identify which statements by Vernon were false. The Bureau's summary of evidence, by itself, is not sufficient to satisfy its obligation to prepare findings of fact. The Bureau's findings, however, recite information Vernon reported to Dr. Lonstein and to Brossart, including Vernon's statements to them about back pain, sitting tolerance, and lack of significant medical change in the past four years. The Bureau's reference to Vernon's verbal reports and statements to medical providers distinguishes this case from *Zueger*, 1998 ND 175, ¶ 14, 584 N.W.2d 530, in which the Bureau terminated benefits based solely on the claimant's conduct at a functional capacity evaluation. Here, the Bureau also summarized evidence about Vernon's participation in various physical activities, including an aerobics class from 1991 to 1994, golfing in 1994, weightlifting in 1995, and the private investigator's interview and videotape of Vernon performing other activities. Those activities and Vernon's statements support an inference Vernon did not candidly reveal the true nature of his back pain to his medical care providers.

[¶ 16] Based on the Bureau's summary of the evidence, it concluded Vernon willfully made false statements to Brossart and Dr. Lonstein, which were material to a determination of his physical capabilities and efforts to return to work. A person's state of mind must be inferred from all the circumstances. *Hausauer*, 1997 ND 243, ¶ 14, 572 N.W.2d 426. The Bureau explained it declined to accept the ALJ's recommendation Vernon's false statements were not willful and intentional, because the Bureau found Vernon's explanations for his statements, in light of the overall record, lacked credibility and defied common sense. The Bureau may reject a hearing officer's recommendation on a witness's credibility. *Blanchard*, 1997 ND 118, ¶ 21, 565 N.W.2d 485. Although it is not appropriate to merely recite evidence as findings of fact, the Bureau's findings and conclusions, taken together with its explanation for rejecting the ALJ's recommendation, are sufficient to facilitate appellate review and to explain the Bureau's rationale for rejecting the ALJ's recommendation. The Bureau's decision Vernon willfully made false statements to Brossart and Dr. Lonstein is supported by its findings and conclusions. A reasoning mind reasonably could have decided the Bureau's factual decision was proven by the weight of the evidence from the entire record. The Bureau's factual decision is therefore supported by a preponderance of the evidence.

IV

[¶ 17] Vernon argues the Bureau's failure to provide him adequate pre-termination notice violated his due process rights under *Flink v. North Dakota Workers Comp. Bur.*, 1998 ND 11, 574 N.W.2d 784, and *Beckler v. North Dakota Workers Comp. Bur.*, 418 N.W.2d 770 (N.D.1988). He argues the only appropriate remedy for the inadequate pre-termination notice is for the Bureau to pay all of the disputed benefits.

[¶ 18] In *Beckler*, 418 N.W.2d at 775, this Court held due process under the federal and state constitutions requires the Bureau to give a claimant pre-termination notice of its intent to terminate disability

benefits, a summary of the evidence supporting termination, and an opportunity to respond. *See also* N.D.C.C. § 65–05–08.1(6) (1993). *Cf. American Mfrs. Mut. Ins. Co. v. Sullivan*, —— U.S. ——, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999) (holding no state action and therefore no due process right to notice and opportunity to be heard before a private workers compensation insurer suspends payment of disputed medical bills pending a review of the reasonableness and necessity of injured employee's medical treatment). In *Beckler*, at 775, we recognized the pre-termination opportunity to respond was not synonymous with a pre-termination evidentiary hearing. We said the opportunity to respond was limited to a written submission as an initial check against an erroneous decision with a timely post-termination evidentiary hearing coupled with the Bureau's authority to award retroactive disability benefits. *Id.* We held because the Bureau failed to provide a claimant with necessary pre-termination notice and procedures, the claimant was entitled to disability benefits for the time he did not work. *Id.*

[¶ 19] In *Flink*, 574 N.W.2d at 788–89, we considered an issue about the adequacy of a pre-termination notice. There, the Bureau's pre-termination notice relied on a reason for termination of benefits which was unrelated to the Bureau's ultimate reason for terminating benefits—a medical release to return to work. We said the pre-termination notice "blindsided" the claimant and failed to provide him with adequate notice of the Bureau's intent to discontinue his benefits because he was released to ▮▮▮ to work. *Id.*

[13] [¶ 20] Here, the NOID said "information received by the bureau indicates that you have made false statements regarding your physical disability status. A

formal legal order will be mailed in the near future." The NOID required Vernon to respond within 21 days, but did not include a "summary of the . . . evidence supporting termination." *Beckler*, 418 N.W.2d at 775. *See* N.D.C.C. § 65–05–08.1(6) (1993). More than a simple allegation of "false statements" is required to satisfy the fundamental requirements of notice and procedural due process. The NOID's vague and conclusory statement lacked specifics to apprise Vernon of the evidence relied upon ▮ the Bureau.

[14] [¶ 21] Moreover, Vernon and his counsel responded to the NOID with a request for specific information about what false statements Vernon had made, and this record does not include any response by the Bureau until it issued the May 14, 1997 order. *Compare Unser*, 1999 ND 129, ¶ 8 (holding claimant failed to timely present issue about adequacy of pre-termination notice). The Bureau failed to provide Vernon with a meaningful opportunity to respond before it issued the May 1997 order terminating his benefits. We conclude the Bureau failed to comply with the pre-termination ▮▮▮▮▮▮ of *Beckler*.

[15] [¶ 22] The district court ordered the Bureau to pay Vernon disability benefits from January 21, 1997 to May 14, 1997, because the court concluded the Bureau failed to issue an appealable order under N.D.C.C. § 65–01–14(7). *See* fn. 1. The Bureau has not cross-appealed the district court's decision. Under the circumstances of this case, we conclude the remedy imposed by the district court was an appropriate remedy for the Bureau's inadequate pre-termination notice.[4]

[¶ 23] The Bureau's May 1997 order summarized factual circumstances underlying the Bureau's conclusion Vernon had made false statements and the order provided Vernon with an adequate summary

---

4. Under the rationale of *Madison v. North Dakota Dep't of Transp.*, 503 N.W.2d 243, 246–47 (N.D.1993), we have imposed more serious sanctions for an agency's systemic disregard of the law. *See, e.g., Scott v. North Dakota Workers Comp. Bur.*, 1998 ND 221, ¶¶ 19–22, 587 N.W.2d 153. The record in this case does not support a more serious sanction.

of the evidence supporting the Bureau's action. Vernon requested a formal hearing on the Bureau's May 1997 order, and the Bureau's procedures from the May 1997 order fairly apprised Vernon of the nature of the proceedings and satisfied due process. *See Estate of Robertson v. Cass Cty.*, 492 N.W.2d 599, 602 (N.D.1992) (stating notice is adequate if it apprises party of the nature of the proceeding so there is no unfair surprise).

## V

[¶ 24] Vernon argues Jeff Bitz's involvement in issuing the May 1997 order and the final order rejecting the ALJ's recommendation violates Vernon's right to a fair hearing and due process. Vernon did not raise this issue below. We generally refuse to consider issues raised for the first time on appeal. *Unser*, 1999 ND 129, ¶ 14. Moreover, we recently rejected the same argument in *Saakian v. North Dakota Workers Comp. Bur.*, 1998 ND 227, ¶¶ 18–21, 587 N.W.2d 166.

## VI

[¶ 25] Relying on *United States v. Bajakajian*, 524 U.S. 321, 118 S.Ct. 2028, 141 L.Ed.2d 314 (1998), Vernon argues the Bureau's order requiring him to forfeit future benefits is an "excessive fine" under the federal and state constitutions. Vernon did not raise this issue below, and we therefore decline to address it. *See Unser*, 1999 ND 129, ¶ 14.

## VII

[¶ 26] Vernon argues ex parte contacts between the Bureau's outside counsel and Bitz, the Bureau official who rejected the ALJ's recommendation, requires reinstatement of the ALJ's decision under *Scott v. North Dakota Workers Comp. Bur.*, 1998 ND 221, 587 N.W.2d 153.

[¶ 27] In *Scott*, 1998 ND 221, ¶¶ 18, 22, 587 N.W.2d 153, we recently held ex parte contacts between the Bureau's outside counsel and the Bureau official who rejected an ALJ's recommendation violated

N.D.C.C. § 28–32–12.1(3), and we directed the Bureau to reinstate the ALJ's recommendation. In *Scott*, the claimant raised the issue in his appeal to the district court. Although we decided *Scott* while Vernon's appeal was pending before the district court, Vernon was represented by the same counsel as the claimant in *Scott*, and Vernon did not raise this issue in his appeal to the district court. Instead, he first raised the issue in a N.D.R.Civ.P. 60(b) motion after the district court's decision. The district court denied Vernon's motion, ruling he failed to raise the issue in proceedings before the Bureau, or in his appeal. We hold this issue has not been preserved for our review, and we therefore decline to address it. *See Unser*, 1999 ND 129, ¶ 14.

[¶ 28] We affirm the district court judgment.

[¶ 29] GERALD W. VANDE WALLE, C.J., and WILLIAM A. NEUMANN, DALE V. SANDSTROM, and CAROL RONNING KAPSNER, JJ., concur.