1999 ND 225

**Patricia WITCHER, Claimant and Appellant,**

v.

**NORTH DAKOTA WORKERS COMPENSATION BUREAU, Appellee,**

and

**University of North Dakota, Respondent.**

No. 990138.

Supreme Court of North Dakota.

Dec. 1, 1999.

Mark G. Schneider, Schneider, Schneider & Phillips, Fargo, ND, for claimant and appellant.

Jacqueline Sue Anderson, Special Assistant Attorney General, Fargo, ND, for appellee.

MARING, Justice.

[¶ 1] Patricia Witcher appealed a judgment affirming a North Dakota Workers Compensation Bureau order offsetting an award of permanent partial impairment ("PPI") benefits against PPI benefits previously paid to her. We hold the Bureau properly offset Witcher's PPI award with previously paid PPI benefits that were pending appeal and were recalculated under the third edition revised of the American Medical Association's "Guides to the Evaluation of Permanent Impairment." We affirm.

I

[¶ 2] Witcher was injured during the course of her employment on November 7, 1989. The Bureau accepted Witcher's claim, and through a series of orders, paid her PPI benefits for various "whole body" and "scheduled" impairments. On March 9, 1995, the Bureau awarded Witcher 79.56 weeks of scheduled PPI benefits under the fourth edition of the AMA Guides for a 34% impairment of her "left leg at hip for knee." Witcher appealed, seeking an evaluation of her right knee, right shoulder and arm, left wrist, spine, and mental disorders.

[¶ 3] On June 20, 1995, the Bureau awarded Witcher 148.64 additional weeks of PPI benefits under the fourth edition of the AMA Guides for the following impairments:

26.5%—right leg at hip for knee—62.01 weeks

9.8%—right arm at shoulder for shoulder and elbow—24.50 weeks

25%—master hand—6.13 weeks

2.4%—left arm at shoulder for wrist—6 weeks

10%—whole body for cervical, thoracic, and lumbar spine—50 weeks

Witcher appealed, raising PPI issues about her chronic pain and the Diagnosis–Related Estimates Model versus Range of Motion Model for evaluating her lumbar spine.

[¶ 4] In July 1996, the Bureau denied Witcher whole body PPI benefits for a psychiatric condition. She appealed that order, and after a formal administrative hearing, the Bureau issued a July 11, 1997 order awarding her 295 weeks of PPI benefits for a 65% whole body impairment for her psychiatric condition. No further appeal was taken from the July 1997 order.

[¶ 5] Witcher also sought whole body PPI benefits for chronic pain. Additionally, under *McCabe v. North Dakota Workers Comp. Bur.*, 1997 ND 145, 567 N.W.2d 201, and Witcher's pending appeals from the March 9 and June 20, 1995 orders, the Bureau recalculated the PPI ratings in those orders under the third edition revised of the AMA Guides. In *McCabe,* at ¶¶ 6–7, 16, we construed statutory language dictating use of the "most recent edition" and the "most current edition" of the AMA Guides to require the Bureau to calculate PPI awards under the edition of the AMA Guides in effect when the respective statutes were enacted. The Bureau's March 9 and June 20, 1995 orders calculated Witcher's PPI awards under the fourth edition of the AMA Guides, and the parties do not dispute *McCabe* required those awards to be recalculated under the third edition revised of the AMA Guides.

[¶ 6] The Bureau thereafter issued a May 12, 1998 order awarding Witcher a total of 123.31 weeks of PPI benefits for scheduled impairments:

20.5%—left leg at hip for knee—47.97 weeks

13.1%—right leg at hip for knee—30.65 weeks

2.5%—left arm at shoulder for wrist—6.25 weeks

12.3%—right arm at shoulder for shoulder and elbow—30.75 weeks

25%—master hand—7.69 weeks

After correcting a computational error, the Bureau's May 1998 order also awarded Witcher a combined 81 percent whole body impairment for her psychiatric condition, chronic pain, and cervical, thoracic, and lumbar spine, which entitled her to a total of 405 weeks of whole body PPI benefits. The Bureau combined Witcher's scheduled and whole body awards, and concluded she was entitled to PPI benefits for 528.31 weeks. The Bureau issued an amended order awarding Witcher PPI benefits for 528.31 weeks and offsetting that award with 523.30 weeks of benefits she had previously been paid. The Bureau thus awarded Witcher an additional 5.11 weeks of PPI benefits worth $659.19.

[¶ 7] Witcher appealed. The parties submitted the appeal on brief to an administrative law judge, and the ALJ recommended upholding the Bureau's PPI award. The Bureau adopted the ALJ's recommendation, and the district court affirmed the Bureau's decision.

## II

[¶ 8] On appeal, we review the Bureau's decision, not the district court's decision. *Vernon v. North Dakota Workers Comp. Bur.*, 1999 ND 153, ¶ 8, 598 N.W.2d 139. Under N.D.C.C. §§ 28–32–19 and 28–32–21, we affirm the Bureau's decision unless its findings of fact are not supported by a preponderance of the evidence, its conclusions of law are not supported by its findings of fact, its decision is not supported by its conclusions of law, its decision is not in accordance with the law, or its decision violates the claimant's constitutional rights or deprives the claimant of a fair hearing. *Vernon*, at ¶ 8. Questions of law, including the interpretation of a statute, are fully reviewable on appeal from a decision by the Bureau. *Lee v. North Dakota Workers Comp. Bur.*, 1998 ND 218, ¶ 5, 587 N.W.2d 423.

## III

[¶ 9] Witcher contends the Bureau improperly offset her "scheduled" PPI awards under N.D.C.C. § 65–05–13 against her "whole body" awards under N.D.C.C. § 65–05–12. As relevant to this issue, N.D.C.C. § 65–05–12 authorized PPI benefits for "whole body" impairments and provided "[a]ny subsequent award for impairment must be made minus any previous award given on any earlier claim or the same claim for that same member or body part." Section 65–05–13, N.D.C.C., authorized PPI benefits for "scheduled" impairments to enumerated body parts and provided "[a]n impairment award made by the bureau in the past under this section or section 65–05–12 must be deducted from a subsequent impairment award for injury to the same part of the body." The parties do not dispute the 1989 versions of N.D.C.C. §§ 65–05–12 and 65–05–13 apply to Witcher's PPI claims.

[¶ 10] Witcher argues a plain reading of N.D.C.C. § 65–05–12 dictates the Bureau may not subtract previous or past PPI awards from subsequent PPI awards for a different body part. She argues the Bureau's 1998 PPI ratings for her left and right knee are less than the previous ratings for those body parts, and rather than simply "zero" out the difference, the Bureau added the previous and the current awards and offset the previous awards against the current awards without considering whether the current award was for the same body part as the previous award. Witcher argues the Bureau's offset violates N.D.C.C. § 65–05–12, which prohibits subtracting any past or previous award from a subsequent award except for awards involving the same member or body part. She claims she is entitled to an additional $8,120.55 for 62.95 weeks of PPI benefits.[1]

1. Witcher argues she is entitled to an additional 54.89 weeks for whole body impairments (405 weeks minus 350.11 weeks previously paid); 0 weeks for her left knee (47.97 weeks minus 79.56 weeks previously paid); 0 weeks for her right knee (30.65 weeks minus 62.01 weeks previously paid); .25 weeks for her left wrist (6.25 weeks minus 6.0 weeks previously paid); 6.25 weeks for her right shoulder (30.75 weeks minus 24.5 weeks pre-

[¶ 11] Our primary objective in construing statutes is to ascertain the Legislature's intent, and we look first at the words used in the statute, giving them their plain, ordinary, and commonly understood meaning. *Lee,* 1998 ND 218, ¶ 11, 587 N.W.2d 423. We construe statutes as a whole to harmonize and give meaning to each word and phrase. *Blanchard v. North Dakota Workers Comp. Bur.,* 1997 ND 118, ¶ 14, 565 N.W.2d 485; *Johnson v. North Dakota Workers' Comp. Bur.,* 484 N.W.2d 292, 295 (N.D.1992).

[¶ 12] The language of N.D.C.C. §§ 65-05-12 and 65-05-13 requires the Bureau to subtract "past" or "previous" impairment awards from "subsequent" awards for the "same member or body part" or the "same part of the body." Under that language, the Bureau's authority to subtract past or previous awards from subsequent awards is limited to past or previous awards for the same member or body part or the same part of the body.

[¶ 13] The Bureau nevertheless argues it has continuing jurisdiction under N.D.C.C. § 65-05-04 to offset past or previous awards from subsequent awards for different body parts, because Witcher's pending appeals and this Court's intervening decision in *McCabe* required the Bureau to reevaluate Witcher's PPI rating under the third edition revised of the AMA Guides.

[¶ 14] Section 65-05-04, N.D.C.C., authorizes the Bureau to review an award at any time and to end, diminish, or increase previously awarded benefits. Section 65-05-29(3)(b), N.D.C.C., permits the Bureau to recoup benefits paid under an erroneous adjudication.

[¶ 15] In *Johnson,* 484 N.W.2d at 295-96, this Court considered the Bureau's authority under N.D.C.C. §§ 65-05-04 and 65-05-29(3) to recoup previously paid benefits. There, a Bureau claims analyst initially accepted a claim, and the claimant

received medical and disability benefits. *Johnson,* at 293. The Bureau subsequently dismissed the claim, concluding the injury did not arise in the course of employment, and ordered the claimant to repay the benefits he had received. *Id.* We concluded the claims analyst's initial acceptance of the claim was an erroneous adjudication by the Bureau within the meaning of N.D.C.C. § 65-05-29(3)(b), and the Bureau was authorized to review the award and seek repayment under N.D.C.C. § 65-05-04. *Johnson,* at 296.

[¶ 16] In *Cridland v. North Dakota Workers Comp. Bur.,* 1997 ND 223, ¶¶ 23-30, 571 N.W.2d 351, we considered *Johnson* and N.D.C.C. §§ 65-05-04 and 65-05-29(3) in the context of the preclusive effect of a final Bureau order entered after a formal adjudicatory proceeding. After a formal adjudicatory hearing, the Bureau decided a work injury was compensable. *Cridland,* at ¶ 8. The Bureau subsequently litigated aggravation and apportionment issues for that injury. *Id.* at ¶ 9. We concluded:

> *Johnson* and N.D.C.C. §§ 65-05-04 and 65-05-29(3) must be considered in light of the doctrine of administrative res judicata, the importance of finality of agency decisions, and the purpose of the workers compensation law to provide injured workers with "sure and certain relief" to preclude the Bureau, in the absence of new evidence or a change in medical condition, from relitigating claims which were, or should have been decided, in a prior formal adjudicative hearing.

*Cridland,* at ¶ 29. *See also McCarty v. North Dakota Workers Comp. Bur.,* 1998 ND 9, ¶ 20, 574 N.W.2d 556 (applying administrative res judicata to issue about false statement which should have been decided in prior formal adjudicatory hearing). In *Cridland,* at ¶ 29, we concluded administrative res judicata precluded the

viously paid); and 1.56 weeks for her master hand (7.69 weeks minus 6.13 weeks previous-

ly paid).

Bureau from litigating aggravation and apportionment issues which should have been raised in the prior formal adjudicatory hearing.

[¶ 17] The preclusive effect of administrative res judicata does not apply to an agency decision that is not final. *See Saakian v. North Dakota Workers Comp. Bur.*, 1998 ND 227, ¶ 17, 587 N.W.2d 166. Under N.D.C.C. § 65–05–03, a final Bureau decision is entitled to full faith and credit. *See Westman v. North Dakota Workers Comp. Bur.*, 459 N.W.2d 540, 542 (N.D.1990).

[¶ 18] Here, except for the PPI benefits for Witcher's psychiatric condition, which were awarded in the unappealed July 11, 1997 order after a formal hearing, Witcher's appeals of the other aspects of her PPI benefits were pending when this Court decided *McCabe*. The Bureau then reevaluated Witcher's PPI ratings under the third edition revised of the AMA Guides and *McCabe*. Those reevaluations resulted in different impairment ratings for some of Witcher's scheduled impairments, and the Bureau offset the previous awards against the subsequent award.[2]

[¶ 19] Although Witcher argues some of the PPI ratings in the Bureau's reevaluation were erroneous, she did not raise that argument until her reply brief to this Court, and in proceedings before the Bureau, she relied on the PPI ratings in the reevaluation. Witcher's argument the PPI ratings in the reevaluation were erroneous is not timely. *See Wingerter v. North Dakota Dep't of Transp.*, 530 N.W.2d 362, 365 (N.D.1995) (stating Supreme Court will not consider issue raised for first time on appeal).

[¶ 20] When N.D.C.C. §§ 65–05–12 and 65–05–13 are construed together with administrative principles for finality, res judicata, and continuing jurisdiction, we believe the language of N.D.C.C. §§ 65–05–12 and 65–05–13 that a past impairment award must be deducted from a subsequent impairment award for the same part of the body necessarily contemplates the past award was not subject to a pending appeal. If past or previous awards have been paid but are required to be recalculated in a pending appeal, we believe those past or previous awards may be offset against the subsequent decision on appeal to completely resolve all outstanding disputes about a claimant's impairment rating. Here, Witcher's appeals of the past awards were pending, and the Bureau recalculated her impairment ratings under *McCabe*. Under these circumstances, the Bureau was not precluded from offsetting the previously paid awards against the subsequent award. Under the procedural posture of this case, we conclude the Bureau's offset did not violate N.D.C.C. §§ 65–05–12 and 65–05–13.

IV

[¶ 21] Witcher argues the Bureau deprived her of due process, because it failed to give her proper notice and a formal hearing before recouping the benefits.

[¶ 22] The Bureau did not relitigate Witcher's PPI benefits within the meaning of *Cridland*, 1997 ND 223, ¶ 29, 571 N.W.2d 351. Rather, the Bureau reevaluated her impairments and recalculated her ratings within the context of her pending appeals. The Bureau then issued an order offsetting her recalculated benefits with

---

2. The Bureau initially decided Witcher had a 34% impairment for 79.56 weeks for her left leg at hip for knee; a 26.5% impairment for 62.01 weeks for her right leg at hip for knee; a 2.4% impairment for 6 weeks for her left arm at shoulder for wrist; a 9.8% impairment for 24.5 weeks for her right arm at shoulder for elbow and shoulder; and a 25% impairment for 6.13 weeks for her master hand. The Bureau subsequently decided she had a 20.5% impairment for her left leg for 49.97 weeks; a 13.1% impairment for her right leg for 30.65 weeks; a 2.5% impairment for her left arm for 6.25 weeks; a 12.3% impairment of her right arm for 30.75 weeks; and a 25% impairment for her master hand for 7.69 weeks.

previous payments of benefits that were pending appeal. Witcher thereafter appealed and was entitled to a formal hearing. The pretermination procedures of *Beckler v. North Dakota Workers Comp. Bur.*, 418 N.W.2d 770, 772–73 (N.D.1988), are not applicable to a lump sum award that was pending appeal and was not completely resolved until the Bureau's May 1998 order. *See Renault v. North Dakota Workers Comp. Bur.*, 1999 ND 187, ¶ 13, 601 N.W.2d 580; *Nemec v. North Dakota Workers Comp. Bur.*, 543 N.W.2d 233, 237–38 (N.D.1996). Witcher's due process arguments are not persuasive.

## V

[¶ 23] We affirm the district court judgment.[3]

[¶ 24] GERALD W. VANDE WALLE, C.J., WILLIAM A. NEUMANN, DALE V. SANDSTROM, CAROL RONNING KAPSNER, JJ., concur.

**3.** In her main brief to this Court, Witcher argued she was entitled to attorney fees under the law in effect when she was injured in 1989. In her reply brief, Witcher cited our decision in *Saari v. North Dakota Workers Comp. Bur.*, 1999 ND 144, 598 N.W.2d 174, and withdrew the issue about attorney fees. We therefore do not address that issue.