2000 ND 33

**Eugene SIEWERT, Claimant
and Appellee,**

v.

**NORTH DAKOTA WORKERS
COMPENSATION BUREAU,**
Appellant,

and

**Siewert's Jack & Jill, Respondent**

No. 990276.

Supreme Court of North Dakota.

Feb. 22, 2000.

Kathryn L. Dietz of Dietz, Little & Haas, Bismarck, for claimant and appellee.

Brent J. Edison, Special Assistant Attorney General, Bismarck, for appellant.

SANDSTROM, Justice.

[¶ 1] The North Dakota Workers Compensation Bureau appeals the judgment of the South Central Judicial District Court. We affirm the Bureau's decision and reverse the judgment of the district court.

## I

[¶ 2] This case was previously before this Court in *Siewert v. North Dakota Workers Comp. Bureau*, 554 N.W.2d 465 (N.D.1996). Siewert claims he was injured on March 20, 1990, when he fell from a ladder while fixing a light on the outside of his grocery store. The Bureau accepted liability and paid medical expenses and disability benefits to Siewert.

[¶ 3] Following his fall, Siewert exhibited amnesia-like symptoms, which he alleges are still present. He claims to have retrograde amnesia ranging back thirty years prior to his fall.

[¶ 4] Either Siewert or his medical records have been examined by at least twenty-two doctors. Not one of the doctors who examined him has been able to determine with certainty the cause of his memory loss. Each doctor has several different theories about what may have caused his memory disorder. The doctors claim Siewert's memory loss is inconsistent with the clinical definition of amnesia, and almost all of them indicate malingering may be the cause of the disorder. Testing has not revealed a brain injury causing his memory loss.

[¶ 5] One possible cause suggested by Dr. Marvin Firestone is that the memory disorder is a "hysterical phenomenon reinforced by his severe depression." Dr. Firestone also suggested Siewert is "locked into his amnestic syndrome," which is "extremely depressing." Dr. Firestone noted Siewert's fall may be the

reason for his present condition, in an indirect way.

[¶ 6] Except for Dr. M.C. Brown, all of the doctors who have examined Siewert or his records agree he suffers from depression. The cause of the depression, however, is unknown. Dr. Craig DeGree, Siewert's treating doctor, concluded he "did receive head trauma, which did produce an organic brain syndrome."

[¶ 7] Although four or five doctors hypothesized Siewert had suffered a mild brain injury, many concluded his memory disorder was inconsistent with a traumatic brain injury. Dr. Firestone stated the memory disorder was most likely malingering from its inception on the day of the injury. Dr. DeGree stated malingering had not been ruled out as the cause of his amnesia.

[¶ 8] Some of the doctors have pointed to three stressors present at the time of the accident as causing his depression or memory disorder, or as being motives for malingering. First, Siewert's business was having financial difficulties. Second, his alleged embezzlement from the town fire department had just been discovered, although it is uncertain whether Siewert knew of the allegations against him. Third, Siewert was possibly being blackmailed.

[¶ 9] The Bureau investigated Siewert's claim after reports of possible malingering. On August 24, 1992, the Bureau ordered that Siewert's benefits be terminated and that he repay $113,677.37 in benefits previously paid to him.

[¶ 10] An evidentiary hearing was held, and the Bureau issued an order on May 15, 1995, reiterating its earlier decision to terminate benefits and seek reimbursement from Siewert. He appealed to the district court, which reversed the Bureau and remanded for reinstatement of benefits or additional findings "related to [his] mental status vis a vis malingering or other medical phenomena not resulting from his injuries of March 20, 1990."

[¶ 11] The Bureau then appealed to this Court, asserting a preponderance of evidence supported its finding Siewert did not injure himself in a work-related accident. *See Siewert v. North Dakota Workers Comp. Bureau,* 554 N.W.2d 465, 466 (N.D. 1996). In an opinion dated October 22, 1996, this Court held the Bureau had not shown Siewert intentionally injured himself to receive benefits, and "a reasonable person could not find by the greater weight of the evidence that Siewert did not sustain injuries in a work-related fall." *Id.* at 470–71. The Court further concluded the extent of his work-related injuries and "whether he has fabricated symptoms since the accident were not subjects of the administrative proceedings and, accordingly, were not resolved by this appeal." *Id.* at 471.

[¶ 12] As of October 21, 1997, approximately one year after this Court's decision, the Bureau still had not reinstated his benefits or made additional findings. Thus, Siewert obtained an alternate writ of mandamus, ordering the Bureau to reinstate benefits or make additional findings in an appealable order.

[¶ 13] On October 31, 1997, the Bureau responded by issuing additional findings of fact, conclusions of law, and order upon remand, in which it held Siewert was entitled to disability and medical benefits only for sixty days following his injury. The Bureau further held Siewert had engaged in a "pattern of malingering and fabricating symptoms" and he had made "false statements material to his claim." The Bureau ordered Siewert to repay benefits of $102,137.18 and precluded him from claiming additional benefits. He requested reconsideration, and the Bureau set forth a specification of issues consisting of whether Siewert "made intentional and material false statements concerning his true medical and psychological condition" and "[w]hether the Bureau is liable for medical, disability, or other benefits paid or payable more than 60 days after claimant's fall from the ladder."

[¶ 14] A hearing was held on May 8, 1998, and the administrative law judge ("ALJ") issued a fifty-one page decision containing recommended findings of fact, conclusions of law, and order on January 28, 1999. The ALJ found Siewert was not entitled to disability or medical benefits in connection with his fall of March 20, 1990, for more than sixty days following the injury.

[¶ 15] In addition, the ALJ found Siewert's amnesia-like symptoms were caused by depression and there was no substantial evidence the depression was caused by or related to his fall. The ALJ further found Siewert must repay "the sum of $102,-137.18 as a repayment of workers compensation benefits erroneously paid to him." The Bureau adopted the ALJ's order, and Siewert appealed to the district court.

[¶ 16] The district court set aside the order, finding "a reasoning mind could not have determined Siewert's medical condition was the result of depression not related to his fall." The district court noted the sole issue before it was Siewert's depression. The district court found the Bureau offered no explanation for having chosen a sixty-day time span in finding Siewert was entitled to benefits for only sixty days following his injury.

[¶ 17] The Bureau timely appealed. N.D.R.App.P. 4(a); N.D.C.C. § 28–32–21. The district court had jurisdiction under N.D.C.C. § 28–32–19. This Court has jurisdiction under N.D. Const. art. VI, § 6, and N.D.C.C. §§ 28–27–01 and 28–32–21.

## II

[¶ 18] On appeal, this Court reviews the Bureau's decision, not the District Court's decision. *Hopfauf v. North Dakota Workers Comp. Bureau,* 1998 ND 40, ¶ 8, 575 N.W.2d 436. Under N.D.C.C. §§ 28–32–19 and 28–32–21, this Court affirms an administrative agency decision:

> unless the agency's findings of fact are not supported by a preponderance of the evidence, the conclusions of law are

not supported by the findings of fact, the decision is not supported by the conclusions of law, the decision is not in accordance with the law or violates the appellant's constitutional rights, or the agency's rules or procedures deprived the appellant of a fair hearing.

*Hein v. North Dakota Workers Comp. Bureau,* 1999 ND 200, ¶ 13, 601 N.W.2d 576.

[¶ 19] The Court's review of the Bureau's findings "is limited to determining if a reasoning mind reasonably could have determined the findings were proven by the weight of the evidence from the entire record." *Feist v. North Dakota Workers Comp. Bureau,* 1997 ND 177, ¶ 8, 569 N.W.2d 1. When we review the Bureau's resolution of conflicting medical evidence, independent findings or substitutions of judgment must not be made. *Hein,* 1999 ND 200, ¶ 15, 601 N.W.2d 576 (citing *Hibl v. North Dakota Workers Comp. Bureau,* 1998 ND 198, ¶ 12, 586 N.W.2d 167).

### A

[¶ 20] Siewert argues his mental condition is causally related to his work injury. The Bureau concluded "[t]here are no objective physical symptoms that Siewert suffered a significant or serious brain injury as a result of his fall" and there was no evidence that whatever brain injury he may have sustained "was not resolved within 60 days following his fall."

[¶ 21] The Bureau points to Dr. Firestone's opinion as support for its conclusion Siewert's condition is unrelated to his work injury. Dr. Firestone examined Siewert and rendered an opinion based on a review of his medical records up to three years past his accident. Dr. Firestone reasoned, because there were so many inconsistencies in Siewert's symptoms and in the progression of the illness and because the amnesia he complains of is inconsistent with observations of him and with testing by neuropsychologists, his condition was not caused by his fall. He stated Siewert's presentation "does not reflect the known

syndromes" that could have resulted from his fall. He further reasoned Siewert's amnestic syndrome has left him depressed.

[¶ 22] In addition, the Bureau cites Dr. Patrick Konewko's opinion that Siewert's neuropsychological status is clearly "incompatible with the known consequences of mild traumatic brain injury" and Dr. Judith Kashtan's opinion that he may suffer from a mixed personality disorder. The Bureau concluded:

> [t]he greater weight of the evidence shows that Siewert's symptoms of amnesia and the other cognitive deficits which he shows upon examination and testing which substantially impair his ability to function normally are caused by depression ... and there is no substantial evidence that the depression was caused by, or otherwise related to, his fall in March 1990.

[¶ 23] The Bureau further noted Dr. Brown testified that because a depression diagnosis is based on self-report, he had "reason to doubt" Siewert suffered from depression. Siewert claims Dr. Brown's opinion that he does not suffer from depression is distinguishable because Dr. Brown examined only his medical records and did not personally examine him.

[¶ 24] Siewert also points to Dr. DeGree's opinion as support for his argument the Bureau could not have reasonably concluded his depression is not causally related to his fall. Siewert argues, because Dr. DeGree has been his treating doctor for many years, Dr. DeGree is in the best position to diagnose his condition. Dr. Michael Martire, who examined Siewert, stated a condition occurring "after an apparent head injury is best determined by a professional who would see the patient on a prolonged basis."

[¶ 25] This Court has declined to establish a presumption entitling a treating doctor's opinion to "great weight," but recognizes that a long-term doctor-patient relationship "may afford the treating doctor a more comprehensive view of the claimant's medical history and condition." *Boger v. North Dakota Workers Comp. Bureau*, 1999 ND 192, ¶ 16, 600 N.W.2d 877 (citing *Symington v. North Dakota Workers Comp. Bureau*, 545 N.W.2d 806, 809–10 (N.D.1996)).

[¶ 26] The Bureau distinguishes Dr. DeGree's opinion by noting his opinion, joined by Dr. Martire, is the only one that reasons a mild brain injury may have caused Siewert's symptoms. The Bureau points out this opinion is substantially disputed by Dr. Konewko, who performed several tests on Siewert. The Bureau stated it rejected Dr. DeGree's opinion because of "its lack of any medical basis or reason beyond his pronouncement." Furthermore, the Bureau found Dr. DeGree's analysis flawed because he did not consider or explain the significant contradictory findings of the other doctors and because he was "selective in his consideration of the evidence that Siewert has a brain injury."

[¶ 27] The medical evidence in this case is overwhelmingly contrary to Siewert's claim. The evidence considered favorable to Siewert consists of the opinion of Dr. DeGree. The ALJ's fifty-one page decision adopted by the Bureau clarified the conflicting reports among the doctors and detailed the reasons for rejecting Dr. DeGree's opinion.

[¶ 28] The Bureau's findings of fact are supported by a preponderance of the evidence; a reasoning mind reasonably could have found Siewert's injuries are not related to his fall at work.

B

[¶ 29] Siewert argues he was taken by surprise at the ALJ's determination his symptoms were caused by depression and his depression was not causally related to the work injury. He claims he had no notice before the hearing that the Bureau intended to litigate that question. Siewert argues the Bureau was only supposed to litigate the issues of malingering and false statements.

[¶ 30] The findings of fact, conclusions of law, and order of October 31, 1997, states substantial evidence shows Siewert "embarked upon a pattern of malingering and fabricating symptoms" immediately following the accident. The document further orders he "is not entitled to disability benefits or medical benefits paid or incurred more than sixty (60) days following his fall" and he has forfeited his right to further benefits.

[¶ 31] The specification of issues set forth by the Bureau, dated March 12, 1998, lists the following issues to be considered and determined at the hearing: whether Siewert made false statements concerning his condition, and whether the Bureau is liable for benefits for more than sixty days following his fall.

[¶ 32] Notice is adequate if it informs the party of the general nature of the questions to be heard. *Saakian v. North Dakota Workers Comp. Bureau*, 1998 ND 227, ¶ 11, 587 N.W.2d 166. *See* N.D.C.C. § 28–32–05(3)(c) (requiring a written specification of issues before an administrative hearing on a workers compensation claim). Because Siewert's symptoms of depression were present almost immediately after his fall, it seems Siewert had adequate notice that the cause of his depression would be litigated. The specification of issues, combined with the October 31, 1997, order, provided adequate notice that the Bureau would be challenging the cause of any medical problems for which Siewert claimed the Bureau was responsible. Accordingly, the Bureau's notice, while not ideal, was adequate to notify Siewert of the questions to be litigated at the May 8, 1998, hearing.

### C

[¶ 33] In addition, Siewert claims he should have received a pre-termination of benefits notice and an evidentiary hearing prior to the termination of his benefits on May 19, 1992. Questions that could have been raised in a previous appeal will not be examined. *Matter of Sturdevant,*

340 N.W.2d 888, 893 (N.D.1983) (citing *Pearce v. North Dakota Workmen's Comp. Bureau,* 68 N.D. 318, 279 N.W. 601, 603 (1938)). By failing to raise the issue regarding pre-termination of benefits notice and evidentiary hearing in his previous appeal, Siewert has waived the issue.

### III

[¶ 34] Siewert further argues his due process rights have been violated by the length of time he has been pursuing his case.

[¶ 35] Sanctions for administrative delay are generally warranted only when a party has shown substantial prejudice from an unreasonable delay. *Wahl v. Morton County Social Services,* 1998 ND 48, ¶ 6, 574 N.W.2d 859. *See State ex rel. Northern Pac. Transp. Co. v. Public Serv. Comm'n,* 82 N.W.2d 597, 602 (N.D.1957) (holding the Public Service Commission delayed its decision for an unreasonable length of time without just cause, because over a year had elapsed since an application had been presented to the Public Service Commission, the hearing had been held, and the briefs had been filed, but no decision had been issued); *see also Hickey v. North Dakota Dept. of Health and Consol. Labs.,* 536 N.W.2d 370, 372 (N.D.1995) (holding, to warrant dismissal of an administrative proceeding for delay, a party must show there was unreasonable or unconscionable delay by the government, and the ability to defend against the allegations was substantially prejudiced by the delay).

[¶ 36] In *Stewart v. North Dakota Workers Compensation Bureau,* the Bureau's delay in issuing an appealable order and providing a post-termination hearing violated due process. 1999 ND 174, ¶ 20, 599 N.W.2d 280. "The procedure employed by the Bureau in [*Stewart*] significantly affected" the claimant's interests because he was left with no benefits and no way to challenge the decision. *Id.* at ¶ 23. *See also Beckler v. North Dakota Workers Comp. Bureau,* 418 N.W.2d 770, 772 (N.D.

1988) (holding claimants have a property right to ongoing benefits).

[¶ 37] Although the Bureau argues this is "an extraordinary case" requiring an extraordinary time for review, the time taken is very troubling. Even if the Bureau's delay in issuing its additional findings of fact, conclusions of law, and order upon remand was unreasonable, however, Siewert has not shown the delay caused him substantial prejudice. During the delay, Siewert did not receive benefits, but we have concluded he was not entitled to them. The delay postponed the time when he was required to repay benefits wrongly paid to him. *See Roise v. Kurtz*, 1998 ND 228, ¶ 25, 587 N.W.2d 573 (recognizing "the use of money over time has value"). Siewert asked for, and was awarded, the attorney's fees and costs he incurred in seeking his alternative writ of mandamus. Siewert has not shown prejudice from the Bureau's delay.

[¶ 38] Although Siewert has not shown actual prejudice here, we admonish the Bureau that endemic institutional delay damages the integrity of the entire system and in appropriate cases may result in findings of contempt or the fashioning of other remedies. *See; e.g., Madison v. North Dakota Dep't of Transp.*, 503 N.W.2d 243 (N.D.1993).

## IV

[¶ 39] We have considered Siewert's other arguments and conclude they are without merit.

[¶ 40] We affirm the Bureau's decision and reverse the judgment of the district court.

[¶ 41] GERALD W. VANDE WALLE, C.J., WILLIAM A. NEUMANN, MARY MUEHLEN MARING and CAROL RONNING KAPSNER, JJ., concur.