2000 ND 79

Dallan BUCHMANN, Claimant and Appellant,

v.

The NORTH DAKOTA WORKERS COMPENSATION BUREAU, Appellee,

and

Magi Touch Carpet and Furniture, Respondent.

No. 990362.

Supreme Court of North Dakota.

April 25, 2000.

Kathryn L. Dietz, of Dietz, Little & Haas, Bismarck, N.D., for claimant and appellant.

Lawrence A. Dopson, Special Assistant Attorney General, Bismarck, N.D., for appellee.

VANDE WALLE, Chief Justice.

[¶ 1] Dallan Buchmann appealed a district court judgment affirming an order of the North Dakota Workers Compensation Bureau for payment of medical expenses and partial disability benefits. We affirm.

[¶ 2] While employed as a floor covering salesperson, Buchmann injured his back and hip lifting a roll of carpet in 1996 and filed a workers compensation claim. The Bureau accepted the claim and awarded benefits. Buchmann had back surgery on March 18, 1998.

[¶ 3] Buchmann participated in a Functional Capacity Evaluation on October 19 and 20, 1998. Jeanne DeKrey, P.T., prepared a report of that evaluation. Under "SIGNIFICANT ABILITIES," the report said Buchmann demonstrates "Maximum lifting abilities of up to 30 lbs."; "Pushing and pulling forces of greater than 50 lbs."; "Frequent tolerance of sitting if no more than 30 minutes at a time"; and "Frequent tolerance of walking if self-paced." Under "SIGNIFICANT DEFICITS," the report listed, among other things: "Primary limitations were with movement to the floor limiting his ability to lift from floor level, crouching, and repetitive squatting," and "Tolerates static standing up to 15 minutes duration, occasionally through the day." The report stated: "In general, Mr. Buch-

mann's abilities place him in the LIGHT to MEDIUM work categories as defined by the *Dictionary of Occupational Titles.*"

[¶ 4] On November 18, 1998, Buchmann and Debra Osowski, a rehabilitation consultant, signed a vocational plan worksheet stating Dr. Dilla had released Buchmann for full-time work, listing "sales" among Buchmann's transferable skills, listing "sales" among other job goals with light and medium physical demand levels, and stating:

These transferable skills/job goals have been reviewed with me. I understand these skills/goals may be used in the development of a vocational plan. My signature below indicates the Rehabilitation Consultant and I reviewed this together.

[¶ 5] A December 18, 1998, vocational rehabilitation plan prepared by Debra Osowski provided in part:

During the Vocational Assessment Appointment and Initial Interview, the Vocational Rehabilitation Hierarchy was reviewed. I explained to Mr. Buchmann at the time of the Vocational Assessment Appointment that although he may not be able to return to the field of carpet sales due to the moving of merchandise, other sales job goals were being explored. He did not express concern with this issue....

....

*VOCATIONAL GOAL:*

1. JOB TITLE: Salesperson, General Merchandise

    DOT CODE: 279.357–054/279.357–014

    PHYSICAL DEMANDS: Light

JOB DESCRIPTION: Sells variety of merchandise, such as dry goods, notions and housewares to retail stores or other outlets.

....

AVAILABILITY OF EMPLOYMENT: Labor market research indicates there is a viable labor market for this job goal....

ANTICIPATED WAGE: $8.63 per hour or $345.20 per week

CONCLUSIONS AS TO FEASIBILITY OF JOB GOAL: Based on Mr. Buchmann's prior sales experience, employer contacts and local labor market research, it appears that this job goal is physically appropriate, has a viable labor market and meets income test guidelines. Mr. Buchmann has demonstrated he possesses the skills necessary to perform this type of work. There are several areas of sales available to Mr. Buchmann despite the fact that he is no longer able to sell floor coverings.

[¶ 6] On January 12, 1999, the Bureau mailed Buchmann a notice of intention to discontinue or reduce benefits. The notice said Buchmann's temporary total disability benefits would be discontinued or reduced, effective February 2, 1998. It specified the following reasons for the benefit discontinuance or reduction:

Your vocational rehabilitation plan has been approved. You have transferable skills to return to work as a salesperson, general merchandise. You may be eligible for partial disability benefits based on the earnings capacity of $345/week or your actual earnings, whichever is higher.

The notice informed Buchmann his right to receive medical treatment or permanent partial impairment benefits was not affected. It also advised Buchmann he must contact the Bureau within 30 days if he believed the Bureau's action was incorrect. The Bureau sent Buchmann another notice on January 15, 1999, amending the effective date of discontinuation from February 2, 1998, to February 2, 1999.

[¶ 7] On January 15, 1999, Buchmann delivered to the Bureau a response to the first notice, stating, in part:

I am asking you to reconsider this decision for the following reasons. I am still having considerable discomfort in my lower back, right hip and right leg. I can't sit very long without having to stand up then I can't stand very long

before I have to sit down—a continuing cycle. Also I have trouble sleeping at night.

At my last doctor's appointment I expressed my concern about the continuing discomfort that I was having and I was told that it could take a year to a year and a half to heal.

[¶ 8] On January 29, 1999, the Bureau issued an order awarding partial disability benefits, thereby terminating Buchmann's temporary total disability benefits. The Bureau found:

### V.

Claimant's significant work history includes work as a carpet salesperson, route sales worker, and carpet installer. Claimant's average weekly earnings at time of injury were $395.00 per week.

### VI.

Claimant's medical limitations restrict claimant to light to medium level work.... The Functional Capacities Assessment dated October 19, 1998, and October 20, 1998, is incorporated herein by reference.

### VII.

The greater weight of the evidence indicates that considering claimant's education, experience, skills and medical limitations, claimant is able to pursue employment as a salesperson in general merchandise, advertising, and automobile sales.

The Bureau concluded:

### II.

The first appropriate rehabilitation option under N.D.C.C. § 65–05.1–01(4) is return to related work suited to claimant's experience, education, and marketable skills.

### III.

Claimant is entitled to partial disability benefits pursuant to N.D.C.C. § 65–05–10.... Claimant is not entitled to vocational rehabilitation benefits or disability benefits beyond those provided by this order.

The Bureau ordered that Buchmann's medical expenses be paid and ordered that he "receive partial disability benefits pursuant to N.D.C.C. § 65–05–10 which is 66–2/3% of the difference between pre-injury earnings and the higher of $345.20 per week or actual earnings."

[¶ 9] Buchmann requested a rehearing. A temporary administrative law judge ("ALJ"), held a hearing on June 9, 1999, and issued recommended findings of fact, conclusions of law, and order affirming the Bureau's order on June 29, 1999. In an order of July 16, 1999, the Bureau adopted the ALJ's recommended findings, conclusions and order. Buchmann appealed to the district court. The district court affirmed the Bureau's order, resulting in the instant appeal.

### I

[¶ 10] On appeal, we review the Bureau's decision, not the district court's decision. *Siewert v. North Dakota Workers Comp. Bureau*, 2000 ND 33, ¶ 18, 606 N.W.2d 501. Under N.D.C.C. §§ 28–32–19 and 28–32–21, we affirm an administrative agency decision unless its findings of fact are not supported by a preponderance of the evidence, its conclusions of law are not supported by its findings of fact, the decision is not supported by the conclusions of law, the decision is not in accordance with the law or violates the appellant's constitutional rights, or the agency's rules or procedures deprived the appellant of a fair hearing. *Id.* Our review of an agency's findings of fact is limited to determining if a reasoning mind reasonably could have determined the findings were proven by the weight of the evidence in the record. *Id.* at ¶ 19. Questions of law are fully reviewable on appeal from a Bu-

reau decision. *Witcher v. North Dakota Workers Comp. Bureau,* 1999 ND 225, ¶ 8, 602 N.W.2d 704.

## II

■ [¶ 11] Buchmann contends he was "denied adequate pre-termination due process," asserting the notice "did not contain a summary of evidence relied upon and Buchmann did not receive a copy of the vocational plan from the Bureau that was the basis for the proposed action." Buchmann also asserts "[h]e had no idea what evidence the Bureau was relying upon."

■ [¶ 12] "Due process requires a participant in an administrative proceeding be given notice of the general nature of the questions to be heard, and an opportunity to prepare and to be heard on those questions." *Saakian v. North Dakota Workers Comp. Bureau,* 1998 ND 227, ¶ 11, 587 N.W.2d 166. "Notice is adequate if it apprises the party of the nature of the proceedings so there is no unfair surprise." *Id.* Additional considerations come into play when the Bureau proposes to terminate benefits without first conducting a hearing. A continuing right to disability benefits under the Workers Compensation Act is a property right protected by the due process clauses of the state and federal constitutions. *Beckler v. North Dakota Workers Comp. Bureau,* 418 N.W.2d 770 (N.D.1988). In *Beckler,* this Court held the Bureau denied Beckler due process of law because its "procedures did not give Beckler a pretermination notice that his disability benefits would be terminated, a summary of the medical evidence supporting termination, and an opportunity to respond." *Id.* at 775. A benefit recipient's pretermination opportunity to respond may "be limited to a written submission as an initial check against an erroneous decision" if the Bureau conducts "a timely post-termination evidentiary hearing" and it has "authority to award retroactive disability benefits." *Id.* As we reiterated in *Vernon v. North Dakota Workers Comp. Bureau,* 1999 ND 153, ¶ 18, 598 N.W.2d

139, in *Beckler* "this Court held due process under the federal and state constitutions requires the Bureau to give a claimant pre-termination notice of its intent to terminate disability benefits, a summary of the evidence supporting termination, and an opportunity to respond."

■ [¶ 13] "The pretermination procedure must include, at a minimum, pretermination notice of the contemplated action, a summary of the evidence supporting the proposed termination, and a pretermination opportunity to respond in writing to the alleged grounds for termination." *Stewart v. North Dakota Workers Comp. Bureau,* 1999 ND 174, ¶ 12, 599 N.W.2d 280. "The pretermination notice must be sufficiently detailed to frame the precise issues, delineate the Bureau's theories and rationale for terminating benefits, and summarize the significant evidence supporting the Bureau's conclusions." *Id.* at ¶ 19. However, a pretermination notice need "not provide the equivalent of a full evidentiary hearing.... The notice need only disclose the evidence in a summary fashion, sufficient to allow meaningful response." *Id.* at ¶ 19 n. 4.

[¶ 14] The Bureau's pretermination notices advised Buchmann his temporary total disability benefits were being discontinued because his vocational rehabilitation plan had been approved, and he had transferable skills to work as a general merchandise salesperson. While brief, the notices did "disclose the evidence in a summary fashion, sufficient to allow meaningful response," *Stewart,* ¶ 19 n. 4. It did "summarize the significant evidence supporting the Bureau's conclusions." *Stewart,* at ¶ 19.

[¶ 15] Very shortly before the Bureau issued the first notice, Buchmann had participated in the formulation of his rehabilitation plan. Buchmann had participated in a Functional Capacity Evaluation in October 1998. In November 1998, Buchmann acknowledged in writing that the rehabili-

tation consultant had reviewed his "transferable skills/job goals" with him, and that he understood "these skills/goals may be used in the development of a vocational plan." Thus, Buchmann's assertion that "[h]e had no idea what evidence the Bureau was relying upon" is somewhat disingenuous.[1] Buchmann responded in writing on January 15, 1999, to the Bureau's January 12, 1999, notice, and requested reconsideration because he was experiencing continuing discomfort and an inability to either sit or stand for very long periods of time. That written response was adequate to serve as "an initial check against an erroneous decision," *Beckler*, 418 N.W.2d at 775.

[¶ 16] Buchmann contends he "was offered a 30–day window of opportunity to respond which was not honored by the Bureau." Buchmann responded in writing within three days of the first notice. The notice told Buchmann to respond within 30 days if he thought the Bureau's action was incorrect. The first notice advised Buchmann benefits would be discontinued or reduced effective February 2, 1998, which the second notice corrected to February 2, 1999, which was 21 days from the date the first notice was issued. Issuing a notice advising a recipient his benefits will be discontinued or reduced in 21 days and telling him he must respond within 30 days carries with it a potential for confusion. However, in this case, Buchmann responded in three days, and he was not misled or prejudiced.

[¶ 17] We conclude the Bureau's pretermination procedures did not deprive Buchmann of due process.

### III

[¶ 18] Buchmann contends the Bureau was required, "as a matter of provid-

ing adequate due process, to conduct a formal evidentiary hearing *before* terminating Buchmann's benefits." Buchmann asserts:

A post-deprivation evidentiary hearing was not held for over four months after benefits were terminated, and a final order following that hearing was not issued by the Bureau for five additional months. Under these circumstances, Buchmann was entitled to a pre-termination evidentiary hearing.

[¶ 19] We have already determined the Bureau's pretermination procedures did not deprive Buchmann of due process. The Bureau issued its initial notice January 12, 1999. Buchmann responded in writing January 15, 1999, providing "an initial check against an erroneous decision," *Beckler*, 418 N.W.2d at 775. The Bureau issued an order January 29, 1999, and issued a similar order February 3, 1999. Buchmann requested a rehearing March 4, 1999. A hearing was scheduled for May 19, 1999, but it was rescheduled to accommodate discovery. A hearing was held on June 9, 1999. The ALJ issued recommended findings of fact, conclusions of law, and order June 29, 1999. The Bureau issued an order adopting the ALJ's recommended order as the Bureau's final order on July 16, 1999.

[¶ 20] The Bureau's "pretermination procedures must be followed by a timely post-termination evidentiary hearing ... at a meaningful time." *Stewart v. North Dakota Workers Comp. Bureau*, 1999 ND 174, ¶ 21, 599 N.W.2d 280. "Sanctions for administrative delay are generally warranted only when a party has shown substantial prejudice from an unreasonable delay." *Siewert v. North Dakota Workers Comp. Bureau*, 2000 ND 33,

---

1. Certainly, it would have been better for all concerned if the Bureau had sent a copy of Buchmann's rehabilitation plan with the notice, which would have narrowed the range of dispute. In cases in which there is a greater time period between a claimant's participation in a rehabilitation plan and the Bureau's notice, it may well be necessary to include a copy of the claimant's rehabilitation plan with the notice, rather than relying on a claimant's subjective ability to analyze the notice and gauge the strength of the Bureau's case.

¶ 35, 606 N.W.2d 501. From our review of the record in light of Buchmann's arguments, we conclude Buchmann has not "shown substantial prejudice from an unreasonable delay," *id.* We conclude the Bureau was not required to hold an evidentiary hearing before terminating Buchmann's temporary total disability benefits.

## IV

[¶ 21] Buchmann contends the Bureau's Findings of Fact 5, 6, 12, 13, 14, 15, and 16 are not supported by a preponderance of the evidence and its conclusions of law are not supported by findings of fact supported by a preponderance of the evidence. The Bureau found:

> 15. The greater weight of the evidence indicates that considering claimant's education, experience, skills and medical limitations, claimant is able to pursue employment as a salesperson in general merchandise, advertising, and automobile sales.
>
> 16. The identified job goals provide claimant with a retained earning capacity of $345.20 per week. Claimant's pre-injury weekly wage was $395.00. Accordingly, claimant may be entitled to partial disability benefits.

[¶ 22] Buchmann's challenge to the Bureau's findings is primarily based upon his belief he cannot get a sales position that will pay him $345.20 per week. A vocational rehabilitation plan cannot guarantee an injured worker either a job or a predetermined weekly wage. *Lucier v. North Dakota Workers Comp. Bureau,* 556 N.W.2d 56, 59 (N.D.1996); *Held v. North Dakota Workers Comp. Bureau,* 540 N.W.2d 166, 170 (N.D.1995). Chapter 65–05.1, N.D.C.C., "does not require certainty." *Held,* at 169. As we explained in *Lucier:*

> The question for the hearing officer, and for this court, is not whether the vocational consultant's plan would be eventually successful. Rather, the question is whether the plan, at the time, gave Lucier a reasonable opportunity to obtain substantial gainful employment in the state.

*Lucier,* 556 N.W.2d at 60.

[¶ 23] Our review of an administrative agency's findings of fact is limited to determining if a reasoning mind reasonably could have determined the findings were proven by the weight of the evidence in the record. *Siewert v. North Dakota Workers Comp. Bureau,* 2000 ND 33, ¶ 19, 606 N.W.2d 501. No productive purpose would be served by detailing Buchmann's testimony, the medical evidence, or the evidence provided by the parties' rehabilitation consultants. After reviewing the record, we conclude a reasoning mind could reasonably find, as the Bureau did, that Buchmann "is able to pursue employment as a salesperson in general merchandise, advertising, and automobile sales" and the identified job goals provide him "a retained earning capacity of $345.20 per week." It is unnecessary to separately review the other challenged findings underlying Findings 15 and 16. We conclude the challenged findings of fact are supported by a preponderance of the evidence.

## V

[¶ 24] Buchmann contends: "The Bureau unfairly and without adequate explanation and an effort to reconcile conflicting expert opinions, disregarded the expert opinion of Robert Weber in favor of the less experienced, unsupported opinion of the Bureau's rehabilitation consultant."

[¶ 25] The Bureau clearly gave greater credence to the testimony of Debra Osowski, the rehabilitation consultant working with Buchmann, than it did to Weber's deposition. The Bureau has discretion to weigh the evidence before it, although it may not pick and choose in an unreasonable manner. *Flink v. North Dakota Workers Comp. Bureau,* 1998 ND 11, ¶ 13, 574 N.W.2d 784. The Bureau explained why it placed less credence on Weber's opinion than on Osowski's in the following finding:

Robert Weber's expert opinion that claimant is without transferable skills and cannot be hired because of his physical restrictions is not persuasive. Claimant's extensive sales experience is a transferable skill. It matters little that his sales experience has, for the most part, been limited to selling floor covering. Employers of sales personnel look for sales experience, not particular product knowledge. It is common sense that one could possess all of the product knowledge in the world, but if that person cannot sell, he cannot perform the essential job function of a salesperson. Claimant does have the experience, skill, and aptitude to pursue employment as a salesperson. It is simply unreasonable for claimant to argue that with his seventeen years of professional sales experience, he is not qualified to sell anything but carpet, and that he is qualified only to be a sales clerk making minimum wage. With regard to claimant's physical restrictions, claimant's treating physician released him to work in a light duty category. The job goals fit that category. And while Weber stated that claimant would not be able to change positions while working as a salesperson, the FCA specifically found that claimant's salesperson duties of sitting, standing, and walking were within claimant's physical restrictions. Weber's opinion that there are no sales jobs that claimant can do is pure supposition, as Weber demonstrated by claiming that "he can say that without talking to employers." In fact, the Corvel rehabilitation consultant did talk to employers of salespeople, and four of six employers reported lifting within claimant's abilities; and should heavier items need to be moved, assistance was available.

The finding adequately explains why the Bureau discounted Weber's opinion and more highly credited Osowski's opinion. We conclude the Bureau did not abuse its discretion in weighing the evidence before it.

## VI

[¶ 26] The judgment is affirmed.

[¶ 27] DALE V. SANDSTROM, WILLIAM A. NEUMANN, MARY MUEHLEN MARING, JJ., concur.

The Honorable CAROL RONNING KAPSNER disqualified herself subsequent to oral argument and did not participate in this decision.