2000 ND 225

**Myron JACOBSON, Claimant
and Appellant,**

v.

**NORTH DAKOTA WORKERS
COMPENSATION BUREAU,
Appellee.**

**No. 20000102.**

Supreme Court of North Dakota.

Dec. 29, 2000.

Rehearing Denied Feb. 5, 2001.

Stephen D. Little, Dietz, Little & Haas, Bismarck, ND, for claimant and appellant.

Brent J. Edison, Special Assistant Attorney General, North Dakota Workers Compensation Bureau, Bismarck, ND, for appellee.

VANDE WALLE, Chief Justice.

[¶ 1] Myron Jacobson appealed the district court judgment affirming a North Dakota Workers Compensation Bureau order requiring Jacobson to forfeit future benefits because of violation of N.D.C.C. § 65–05–33, but remanding the case to the Bureau for reinstatement of Jacobson's benefits from July 21, 1997, to November 30, 1998, to remedy violations of Jacobson's due process rights. We affirm.

I

[¶ 2] Myron Jacobson injured his back on February 4, 1983 when he lifted a 30–gallon barrel while working as an agricultural chemical salesman. He filed a claim for workers compensation benefits and the Bureau accepted his claim. He returned to work full time on March 16, 1983. Jacobson worked for over four years until July 1987 when he asked the Bureau to reopen his claim. After a period of temporary benefits, the Bureau awarded Jacobson permanent total disability benefits beginning January 1991.

[¶ 3] Jacobson began entering fishing tournaments as a professional in 1991. On March 1, 1995, and on June 6, 1996, Jacobson was interviewed to determine the nature and extent of his physical activities.

During a March 1, 1995, interview, Jacobson said he could not lift over ten pounds, avoided all twisting, and left his home only for about an hour each day to visit others. A June 6, 1996, interview was similar except possibly to suggest worsening back pain. That report reiterated Jacobson's activities were quite limited, consisting of doing a few things around the house, some visiting, and avoiding all lifting, twisting, and bending. In conjunction with that interview, as well as on May 3, 1996, and August 25, 1996, Jacobson responded "no" to the form question "Have you performed ANY other work, whether on a part-time, full-time or voluntary basis?"

[¶ 4] On September 3, 1996, an informant told the Bureau that Jacobson had been receiving money fishing in professional fishing tournaments. The Bureau investigated, finding Jacobson was a professional tournament fisherman traveling throughout the upper Midwest and beyond. Jacobson had won some tournaments resulting in substantial income, with the fees for these tournaments paid by Twin City Marine. Jacobson represented Twin City Marine at trade shows, assisted on the sales floor, and he purchased boats from Twin City Marine at a discounted price. Jacobson became aware of the Bureau's surveillance. In February 1997, the Bureau sent another form to Jacobson. This time Jacobson responded "yes" to the same question asking him if he had performed any work and attached an explanation that he understood from his claims worker that winning money at a fishing tournament would not jeopardize his workers compensation benefits.

[¶ 5] On June 30, 1997, the Bureau issued Jacobson a notice of intention to discontinue benefits on the basis of providing false statements regarding his workers compensation claim and failing to report earned income to the Bureau. After the Bureau issued a final order on October 31, 1997, Jacobson requested reconsideration. A formal hearing was held before the administrative law judge on December 18 and 21, 1998, after being scheduled for November 30 and rescheduled at Jacobson's request.

[¶ 6] The administrative law judge recommended a finding that the greater weight of the evidence of record showed Jacobson willfully made false statements relevant to the determination of his claim for workers compensation benefits which could have misled the Bureau in determination of his benefits. The administrative law judge recommended affirming the order denying further benefits but reversing the order for repayment. The administrative law judge also recommended a conclusion that Jacobson was not denied due process of law by the pre-termination notice or the post-termination delay. The Bureau adopted the order of the administrative law judge and Jacobson appealed to the district court. The district court affirmed the Bureau's order to deny further benefits but held the notice and delay violated due process requirements. The district court ordered reinstatement of benefits for the period between the initial termination of benefits on July 21, 1997, to November 30, 1998, the original date of the formal hearing. The Bureau did not appeal from that portion of the order reinstating benefits to November 30, 1998.

## II

[¶ 7] On appeal, we review the decision of the Workers Compensation Bureau. *Siewert v. North Dakota Workers Comp. Bureau*, 2000 ND 33, ¶ 18, 606 N.W.2d 501. Under N.D.C.C. §§ 28–32–19 and 28–32–21, we affirm the Bureau's decision unless its findings of fact are not supported by a preponderance of the evidence, its conclusions of law are not supported by its findings of fact, its decision is not supported by its conclusions of law, its decision is not in accordance with the law or violates the claimant's constitutional rights; or its rules or procedure deprived the claimant of a fair hearing. *Negaard–Cooley v. North Dakota Workers Comp. Bureau*, 2000 ND 122, ¶ 7, 611 N.W.2d

898. We exercise restraint in determining whether the Bureau's findings of fact are supported by a preponderance of the evidence and do not make independent findings or substitute our judgment for that of the Bureau, but determine only whether a reasoning mind reasonably could have determined the findings were proven by the weight of the evidence from the entire record. *Renault v. North Dakota Workers Comp. Bureau*, 1999 ND 187, ¶ 16, 601 N.W.2d 580.

### III

[¶ 8] Jacobson argues he did not make willful, material false statements in violation of N.D.C.C. § 65–05–33. Section 65–05–33 of N.D.C.C. at the time of Jacobson's statements provided:

*Filing false claim or false statements— Penalty.* Any person claiming benefits or payment for services under this title, who willfully files a false claim or makes a false statement, or willfully fails to notify the bureau as to the receipt of income, or an increase in income, from employment, after the issuance of an order awarding benefits, in connection with any claim or application under this title is guilty of a class A misdemeanor, but if the act is committed to obtain, or pursuant to a scheme to obtain, more than five hundred dollars in benefits or services, the offense is a class C felony. Provided further that:

1. For the purposes of this section, "statement" includes any testimony, claim form, notice, proof of injury, proof of return to work status, bill for services, diagnosis, prescription, hospital or doctor records, x-ray, test results, or other evidence of loss, injury, or expense.

2. In addition to any other penalties provided by law, the person claiming benefits or payment for services in violation of this section shall reimburse the bureau for any benefits paid based upon the false claim or false statement and, if applicable,

under section 65–05–29 and shall forfeit any additional benefits relative to that injury. 1995 N.D. Sess. Laws ch. 616, § 6.

[¶ 9] To trigger the statutory consequences of N.D.C.C. § 65–05–33 for a false statement, the Bureau must prove: (1) there is a false claim or false statement; (2) the false claim or false statement is willfully made; and (3) the false claim or false statement is made in connection with any claim or application under this title. *Hausauer v. North Dakota Workers Comp. Bureau*, 1997 ND 243, ¶ 12, 572 N.W.2d 426. We have defined "willfully" in the context of this statute's civil penalties as conduct engaged in intentionally, not inadvertently. *Dean v. North Dakota Workers Comp. Bureau*, 1997 ND 165, ¶ 15, 567 N.W.2d 626 (citing *F.O.E. Aerie 2337 v. Workers Comp. Bureau*, 464 N.W.2d 197, 201 (N.D.1990)).

[¶ 10] We additionally require the Bureau to prove the false statement is material. *Dean*, 1997 ND 165, ¶ 15, 567 N.W.2d 626 (citing *F.O.E. Aerie 2337*, 464 N.W.2d at 201, holding "a false statement must be intentional, not inadvertent, and material, not peripheral."). If the Bureau seeks reimbursement for benefits paid, the level of materiality required is proof by the Bureau that the false claim or false statement caused the benefits to be paid in error. *Hausauer*, 1997 ND 243, ¶ 17, 572 N.W.2d 426. However, if the Bureau is seeking only forfeiture of future benefits, as in Jacobson's case, no such causal connection is required. *Id.* A false claim or false statement is sufficiently material for forfeiture of future benefits if it is a statement which could have misled the Bureau or medical experts in a determination of the claim. *Vernon v. North Dakota Workers Comp. Bureau*, 1999 ND 153, ¶ 13, 598 N.W.2d 139.

[¶ 11] Jacobson told an investigator on March 1, 1995, and on June 6, 1996, his activities were limited; saying he mostly stayed at home, ventured out only to visit

friends for a short time each day and avoided bending, twisting or lifting anything over ten pounds. These statements were made during the time period Jacobson was a professional tournament fisherman in the Cabela's and In–Fisherman Professional Walleye Trail circuits. In 1995 Jacobson entered eight tournaments in the states of North Dakota, South Dakota, Minnesota, Wisconsin, Michigan, and Ohio. In 1996 Jacobson reported entering six professional fishing tournaments, including the invitational Professional Walleye Trail Walleye Super Pro in Arkansas. At one tournament, Jacobson reported catching an eleven-pound walleye. The administrative law judge stated in paragraph eight of the findings of fact, concerning the June 1996 interview, "[i]t is passing strange that any conversation about Jacobson's physical activity would not prompt him to disclose his participation in nine fishing tournaments over the past eighteen months, one of which was an invitational championship tournament."

[¶ 12] In addition to the false statements about his physical abilities, the administrative law judge found Jacobson also made false statements about his work activities, payment of entrance fees, and income. Jacobson claims the Bureau has failed to properly define its own standard for "work" and include it in an administrative rule as required by N.D.C.C. § 28–32–01(11). Jacobson claims the Bureau has maintained injured workers are required to report every physical and mental act to the Bureau under N.D.C.C. § 65–05–33. *See Hopfauf v. North Dakota Workers Comp. Bureau,* 1998 ND 40, ¶ 10, 575 N.W.2d 436, (stating the administrative law judge applied the definition of work provided in Webster's New Collegiate Dictionary (1980), " '[w]ork' is defined as 'activity in which one exerts strength or faculties to do or perform something' "). Therefore, because the Bureau has failed to clearly define work, Jacobson claims it must accept his definition of "work" to mean "gainful employment." Because he did not make a profit, Jacobson determined he was not working as a professional fisherman.

[¶ 13] Despite his contention that fishing was only a hobby, Jacobson, since 1991, regularly reported income from fishing tournaments, in a Schedule C statement of profit or loss from a business, as a part of his federal income tax returns. In addition to tournament winnings, Jacobson's tournament entrance fees were paid by Twin City Marine and he purchased a new boat annually at a discounted price. Jacobson not only traveled the professional fishing tournament circuits, he also represented Twin City Marine and Yar Craft at boat shows and assisted on the sales floor. The administrative law judge found in paragraph fifteen of the findings of fact, "[w]hile Jacobson contends that he thinks of 'work' as a job and employment, considering work in any commonly understood sense of expending time and effort in the performance of tasks for compensation, he surely worked for Twin City Marine and Yar–Craft."

[¶ 14] Jacobson also contended he did not report income to the Bureau because his claims worker had told him winnings from a fishing tournament did not affect his workers compensation benefits any more than winnings from a casino or lottery. However, the administrative law judge found the advice given by the claims worker was not based upon a full disclosure of the facts and circumstances of his participation and therefore was not a justified basis for Jacobson failing to report these activities.

[¶ 15] Although we agree the Bureau has not clearly defined "work" in an administrative rule, under our standard of review, it was reasonable for the administrative law judge to find Jacobson's explanations of his understanding of "work," "employment," "gainful employment," and

"income" were not credible.[1] Based on the common understanding of work, Jacobson was making a false statement when he reported no work activity while entering as a professional in major fishing tournaments, representing Twin City Marine at boat shows, assisting on the sales floor, accepting entrance fees paid for by Twin City Marine, and buying a new boat each season at a discounted price.

[¶ 16] The administrative law judge recommended finding that the greater weight of the evidence indicated Jacobson's false statements in connection with his claim were willful and material. A reasoning mind reasonably could have concluded, as the administrative law judge recommended in paragraph eight of the conclusions of law, "[c]learly, Jacobson's false statements could have, and doubtless did, mislead the Bureau to consider his physical capabilities unchanged and that, therefore, he continued to be permanently totally disabled." The false statements were material with regard to forfeiture of future benefits as they could have misled the Bureau to consider Jacobson's physical capabilities unchanged and not pursue further inquiry into the true nature of his physical activities. Upon review of the record, we affirm the findings of willful, material false statements in violation of N.D.C.C. § 65–05–33.

### IV

[¶ 17] Jacobson claims he was denied due process by the inadequate information on the notice of intent to discontinue benefits and by the delay of the formal hearing. The administrative law judge held, because the delay resulted from Jacobson's carefully parsed responses and the delay did not prejudice Jacobson, there was no due process violation. Relying on this Court's recent decision in *Stewart v. North Dakota*

*Workers Comp. Bureau*, 1999 ND 174, 599 N.W.2d 280, the trial court held the sixteen-month delay between the termination of benefits and the scheduled formal hearing and the inadequate information on the notice of intent to discontinue benefits violated Jacobson's due process rights. To remedy the deprivation of due process, the trial court ordered the reinstatement of benefits from the time of the termination of benefits on July 21, 1997, to November 30, 1998, the date requested by the Bureau for the formal hearing.

[¶ 18] The Bureau's notice of intent to discontinue Jacobson's benefits on July 21, 1997, stated:

> The Bureau has acquired information that you have provided false statements regarding your workers compensation claim and have failed to report earned income to the bureau. This action has been taken pursuant to NDCC 65–05–33. A legal order will be forthcoming regarding these issues.

■ [¶ 19] A continuing right to disability benefits under the Workers Compensation Act is a property right protected by the due process clauses of the state and federal constitutions. *Beckler v. North Dakota Workers Comp. Bureau*, 418 N.W.2d 770, 772 (N.D.1988). As we reiterated recently in *Buchmann v. North Dakota Workers Comp. Bureau*, 2000 ND 79, ¶ 12, 609 N.W.2d 437, in *Beckler* "this Court held due process under the federal and state constitutions requires the Bureau to give a claimant pre-termination notice of its intent to terminate disability benefits, a summary of the evidence supporting termination, and an opportunity to respond" (quoting *Vernon*, 1999 ND 153, ¶ 18, 598 N.W.2d 139). In *Stewart*, we stated "[t]he pretermination notice must

---

1. The lack of either a statutory or administrative-rule definition of "work" leaves the issue of whether certain activity is "work" to an after-the-fact determination. To the extent this may seem to give inadequate notice of what the Bureau considers "work," words not defined in a statute are to be understood in their ordinary sense. N.D.C.C. § 1–02–02. This means not only that the Bureau may not agree with the claimant but, without a definition in the statute or a rule, the Bureau takes the risk the courts will not agree with the Bureau's application of the term to particular facts.

be sufficiently detailed to frame the precise issues, delineate the Bureau's theories and rationale for terminating benefits, and summarize the significant evidence supporting the Bureau's conclusions." 1999 ND 174, ¶ 19, 599 N.W.2d 280. The notice of intent to discontinue benefits Jacobson received was inadequate and violated Jacobson's due process rights. *See Vernon,* 1999 ND 153, ¶ 20, 598 N.W.2d 139.

[¶ 20] Jacobson claims the delay of sixteen months between the July 1997 termination of benefits and the November 1998 hearing date requested by the Bureau also violated his due process rights. The post-deprivation hearing must be provided at a meaningful time, as required by the due process clause. *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 547, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985); *Barry v. Barchi,* 443 U.S. 55, 66, 99 S.Ct. 2642, 61 L.Ed.2d 365 (1979). In *Stewart* we held, "the post-termination procedure in this case, where the Bureau prematurely terminated benefits and left Stewart without a timely remedy while it conducted a ten-month investigation to support its decision, violated due process." 1999 ND 174, ¶ 29, 599 N.W.2d 280. In addition to the ten-month investigation in *Stewart,* another six months passed before Stewart received an evidentiary hearing. *Id.* at ¶ 34. Similarly, Jacobson's benefits were terminated in July of 1997 and his first opportunity to present his evidence for the Bureau's consideration was sixteen months later in November of 1998. The Bureau's delay of sixteen months did not afford Jacobson a timely remedy, violating his due process rights.

[¶ 21] In fashioning a remedy for the violation of Jacobson's due process rights, the trial court looked to *Stewart.* This Court held in *Stewart,* the appropriate remedy for the due process violation of inadequate pre-termination notice and post-termination delay was to reinstate benefits to the time of the post-termination hearing, the first opportunity Stewart had to present his evidence for the Bureau's

reconsideration. 1999 ND 174, ¶ 35, 599 N.W.2d 280. The trial court therefore ordered the reinstatement of Jacobson's benefits for the sixteen-month period between termination and the hearing as an appropriate remedy for the due process violations.

[¶ 22] The Bureau does not dispute the trial court's reinstatement of Jacobson's disability benefits to the date of the hearing under the rationale of *Stewart.* 1999 ND 174, ¶ 35, 599 N.W.2d 280. Jacobson, however, presses for the more serious sanction of reversal. Jacobson claims the Bureau's acts substantially prejudiced his interests and constitute a systemic violation of the law, therefore he claims he is entitled to reinstatement of all future benefits.

[¶ 23] Jacobson cites *Madison v. North Dakota Dept. of Transp.,* 503 N.W.2d 243 (N.D.1993) and *Scott v. North Dakota Workers Comp. Bureau,* 1998 ND 221, 587 N.W.2d 153, to support his argument the Bureau's acts constitute a systemic violation of law. In *Madison,* the Department of Transportation waived the Rules of Evidence in an administrative license-revocation hearing without sufficient explanation, violating not only the clear statutory provision but also contrary to district court instructions. 503 N.W.2d at 246. However, the Court found that other than a fear of testifying, the waiver did not otherwise prejudice Madison. *Id.* This Court, nevertheless, was concerned about this systemic disregard of law and, having previously warned that even if only potentially prejudicial, if commonplace, conduct may warrant reversal, reversed the revocation of Madison's license. *Id.* at 246–47 (relying on a footnote in *State v. Steffes,* 500 N.W.2d 608, 613–14 n. 5 (N.D.1993)). The Court's stated purpose for the reversal was not only to resolve the statute's meaning and effect, but also to ensure the Department acted consistently and predictably in accordance with the law. *Id.* at 247.

[¶ 24] In *Scott*, this Court reversed and remanded the Bureau's denial of Scott's workers compensation benefits because the Bureau improperly allowed ex parte contacts between its outside counsel and the Bureau officer who issued the case decision. 1998 ND 221, ¶ 1, 587 N.W.2d 153. "When a governmental agency systemically disregards the requirements of law, reversal may be required to prophylactically ensure the government acts consistently and predictably in accordance with the law." *Id.* at ¶ 20. Ex parte contacts in *Lawrence v. North Dakota Workers Comp. Bureau*, 2000 ND 60, ¶ 22, 608 N.W.2d 254, also violated the statute, however, in contrast, we were not persuaded the Bureau's actions established a systemic disregard of the law warranting reinstatement of the administrative law judge's recommended decision. Instead of reversal, we determined the proper remedy was to remand for a rehearing. *Id.* at ¶ 23.

■ [¶ 25] The inadequate pre-termination notice and the delay in the post-termination hearing did affect Jacobson's interests by depriving him of benefits for the sixteen months prior to having an opportunity to be heard, similar to *Stewart*. 1999 ND 174, ¶ 23, 599 N.W.2d 280. However, also like *Stewart*, the effect on Jacobson was merely a premature termination of benefits, a termination justified by Jacobson's willful and material false statements in violation of N.D.C.C. § 65–05–33. Reinstatement of benefits for the premature deprivation period was the remedy fashioned to address this particular situation in *Stewart*. *Id.* at ¶ 35. Also, in *Forster v. North Dakota Workers Comp. Bureau*, 447 N.W.2d 501 (N.D.1989), we affirmed the trial court's remedy to reinstate benefits to the date the Bureau issued its post-hearing order. In *Vernon*, 1999 ND 153, ¶ 22, 598 N.W.2d 139, we affirmed the remedy fashioned by the trial court to reinstate benefits to the date the Bureau issued its formal order, holding "under the circumstances" the remedy was

appropriate. Reinstatement of Jacobson's benefits for the sixteen-month period between the termination and hearing is appropriate under the circumstances because it remedies the premature deprivation and provides an incentive for the Bureau to act "consistently and predictably in accordance with the law." *Madison*, 503 N.W.2d at 247. This does not mean the only remedy for these violations is that prescribed by the trial court. Rather, it means under these facts and in light of our recently developing jurisprudence in this area of the workers compensation procedures, this is an appropriate remedy in this instance.

[¶ 26] We affirm the district court judgment.

[¶ 27] SANDSTROM, NEUMANN, and MARING, JJ., and RICHARD W. GROSZ, D.J., concur.

The Honorable RICHARD W. GROSZ, D.J., sitting in place of KAPSNER, J., disqualified.